**Maureen UCHE–UWAKWE, Plaintiff,**

**v.**

**Eric K. SHINSEKI, Secretary of Veterans Affairs; Brian Kawahara, an Individual, Defendants.**

**Case No. EDCV 12–01562 VAP (OPx).**

United States District Court, C.D. California.

Sept. 18, 2013.

Joseph D. Curd, Alexis Galindo, Curd Galindo & Smith LLP, Long Beach, CA, for Plaintiff.

Indira J. Cameron–Banks, AUSA–Office of U.S. Attorney, Los Angeles, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SHINSEKI'S MOTION FOR SUMMARY JUDGEMENT

VIRGINIA A. PHILLIPS, District Judge.

Defendant Eric K. Shinseki's Motion for Summary Judgment came before the Court for hearing on September 16, 2013. After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court GRANTS IN PART AND DENIES IN PART the Motion.

## I. BACKGROUND

On September 12, 2012, Plaintiff Maureen Uche–Uwakwe ("Plaintiff") filed a Complaint against Defendants Eric K. Shinseki, in his official capacity as the Secretary of Veterans Affairs ("VA"), and Brian Kawahara, alleging the following claims: (1) retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 et seq. ("Title VII"), against Defendant Shinseki; (2) race and ancestry discrimination in violation of 42 U.S.C. § 1981, against all Defendants; and (3) "harassment/hostile work environment," in violation of 42 U.S.C. § 1981, against all Defendants. (*See* Compl., Doc. No. 1.) The Complaint alleged, *inter alia,* that Plaintiff was subjected to harassment at the Loma Linda Veterans Affairs Medical Center ("LLVAMC"), where Plaintiff was the only African–American pharmacist, causing her to make numerous complaints both informally and formally, including filing Equal Employment Opportunity ("EEO") complaints and a federal lawsuit that named her co-workers, supervisors, and the Chief of Pharmacy Services, Brian Kawahara. (*See* Compl. 9191 8–34.)

On December 5, 2012, Plaintiff filed a First Amended Complaint ("FAC"), naming the same Defendants in the case caption but directing the claims against only Defendant Shinseki, for retaliation in violation of Title VII, and for harassment/hostile work environment in violation of Title VII. (*See* FAC, Doc. No. 18.) Plaintiff then filed a "Joint Stipulation to Amend Amended Complaint" on January 3, 2013, and filed a Second Amended Complaint ("SAC") on January 8, 2013. (*See* Doc. Nos. 19, 20.)

In the SAC, Plaintiff alleged claims for retaliation in violation of Title VII against Defendant Shinseki, and "harassment/hostile work environment" in violation of Title VII against Defendant Shinseki; despite naming Kawahara as a Defendant, Plaintiff did not allege any claims against him in the SAC. (*See* SAC.)

On January 14, 2013, Plaintiff filed a Notice of Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1) as to Defendant Kawahara. (*See* Doc. No. 21.) Defendant Shinseki filed an Answer to the SAC on January 24, 2013. (*See* Doc. No. 23.)

On August 19, 2013, Defendant Shinseki (hereinafter "Defendant") filed a Notice of Motion and Motion for Summary Judgment ("Motion"), along with the Declaration of Cory Werdebaugh ("Werdebaugh Decl.") and attached Exhibits 1 through 6, the Declaration of Indira Cameron–Banks ("Cameron–Banks Decl.") and attached Exhibits 7 through 11, and a Statement of

Uncontroverted Facts and Law ("DSUF").[1] (*See* Doc. NO. 49.) On August 22, 2013, Defendant filed a Notice of Errata, attaching a corrected version of Exhibit 8 to the Cameron–Banks Declaration.[2] (*See* Doc. No. 50.)

On August 26, 2013, Plaintiff filed Opposition to the Motion ("Opposition" or "Opp'n"), along with a Separate Statement of Undisputed Facts in Support of Plaintiff's Opposition ("PSUF"), the Declaration of Maureen Uche–Uwakwe ("Uche–Uwakwe Decl.") and attached Exhibits A through S, the Declaration of Joseph D. Curd ("Curd Decl.") and attached Exhibits T through AA, Objections to Evidence in Support of Opposition ("Pl. Evid. Obj."), and Notice of Lodging of Authorities in

Support of Opposition.[3] (*See* Doc. No. 51.) Plaintiff also filed a Notice of Errata, correcting the hearing time for the Motion reflected on the cover page of her Opposition papers.

On August 31, 2013, Defendant untimely[4] filed a Reply in support of his Motion, the Declaration of Cory Werdebaugh in support of the Reply ("Supp. Werdebaugh Decl.") and attached Exhibit 13, the Declaration of Indira Cameron–Banks ("Supp. Cameron–Banks Decl.") and attached Exhibits 14 and 15, and Evidentiary Objections to the Uche–Uwakwe Declaration.[5]

On September 3, 2013, Defendant filed a Notice of Lodging the Table of Contents and Table of Authorities, apparently inad-

1. In his DSUF, Defendant fails to cite to the relevant portions of deposition or hearing transcripts by page and line numbers, in violation of the Court's Standing order. (*See* Doc. No. 13 at 3.) The Court reminds Defendant that "'judges are not like pigs, hunting for truffles buried in briefs.'" *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 987 (9th Cir.2011) (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir.1994); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (per curiam)), *cert. denied*, —— U.S. ——, 133 S.Ct. 423, 184 L.Ed.2d 255 (2012). The Court also notes that Defendant's use of brackets around the testimony upon which he relies, which is also required by the Court's Standing Order, is at times inaccurate.

2. The Exhibit 8 filed with the Errata contains what appears to be a separator page following page 8–5, and then Exhibit 8 is repeated a second time, from pages 8–1 to 8–5. To the extent Defendant relies on pages 8–6 to 8–7 in his DSUF, the Court has not been provided with those pages and cannot evaluate whether or not those pages support the factual assertions that rely upon them.

3. Plaintiff's Declarations and attached Exhibits are not separated by tabs, as required by Local Rule 11–5.3. The Court notes, however, that Plaintiff includes a footer on every page of her exhibits, to which she cites in her PSUF, which has assisted the court when

reviewing the Opposition papers. The Court also notes that Plaintiff's Opposition memorandum fails to cite to supporting evidence throughout the argument section. The Court provides the same reminder to Plaintiff as it has to Defendant, *i.e.*, "'judges are not like pigs hunting for truffles buried in briefs'." *Guatay*, 670 F.3d at 987 (citation omitted).

4. Defendant's Reply papers were due to be filed on Friday, August 30, 2013 because of the Labor Day holiday on Monday, September 2, 2013, *i.e.*, the date the papers would have been due to be filed ordinarily, absent a holiday, give the hearing on the Motion set for September 16, 2013. *See* L.R. 6–1. The Court's Standing Order clearly states: "Any opposition or reply papers due on a holiday are due the preceding Friday, not the following Tuesday." (*See* Doc. No. 13 at 2.) Defendant's Reply papers, thus, are untimely. In the interest of justice, however, and in light of the absence of undue prejudice to Plaintiff in Defendant's filing the Reply papers one day late, the Court will consider the Reply papers when evaluating the instant Motion.

5. Defendant did not file any response to Plaintiff's Separate Statement of Undisputed Facts. Accordingly, the Court deems these facts undisputed for purposes of the Motion, to the extent they are sufficiently supported by the cited evidence. *See* Fed. R. Civ. Proc. 56(e)(2); L.R. 56–3; (Doc. No. 13 at 5–6).

vertently omitted from the Reply filing, as well as a Notice of Lodging Proposed Order, apparently also inadvertently not filed with the moving papers. (*See* Doc. Nos. 57, 58.)

## II.  LEGAL STANDARD

A court shall grant a motion for summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998) (citing *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505); *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033 (9th Cir.1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Where the moving party has the burden at trial, "that party must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Celotex*, 477 U.S. at 331, 106 S.Ct. 2548. The burden then shifts to the non-moving party "and requires that party ... to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial." *Id.; Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; Fed.R.Civ.P. 56(a).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. *Id.* The burden then shifts to the non-moving party to show that there is a genuine dispute of material fact that must be resolved at trial. Fed.R.Civ.P. 56(a); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. *See* also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 14:144.

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir.1991); *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987).

## III.  EVIDENTIARY RULINGS

Before setting forth the uncontroverted facts in this action, the Court examines the admissibility of the evidence offered by both sides in support of, and opposition to, the Motion.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of*

*America,* 285 F.3d 764, 773 (9th Cir.2002). "Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Id.* (citation omitted).

## A. Plaintiff's Objections

Plaintiff objects to portions of the Declaration of Cory Werdebaugh filed in support of the Motion, as well as to several DSUFs.

### 1. Objections to Werdebaugh Declaration

Plaintiff objects to a sentence in paragraph 7 of the Werdebaugh Declaration, *i.e.,* "I remember the Chief of HR ... related to workers' compensation liability" on the basis of hearsay, that it lacks foundation, and that it calls for a legal conclusion. (*See* Pl. Obj. at 2.) The Court sustains Plaintiff's hearsay objection and finds the assertion inadmissible, as it is not offered against a party opponent who made the statement. *See* Fed.R.Evid. 801(d)(2).

Plaintiff objects to a sentence in paragraph 8 of the Werdebaugh Declaration, *i.e.,* "I believe that it was an appropriate ... chronically understaffed at that time" on the basis that it lacks foundation, and is irrelevant. (*See* Pl. Obj. at 2.) The Court sustains Plaintiff's lacks foundation objection and finds the assertion inadmissible, as the declarant has not established any personal knowledge of the staffing needs of the outpatient pharmacy and she has not provided her personal knowledge that she was familiar with the circumstances under which Plaintiff had previously been reassigned or how she know those issues were "no longer applicable." *See* Fed. R.Evid. 602.

Plaintiff objects to another sentence in paragraph 8 of the Werdebaugh Declara-

tion, *i.e.,* "I also recall that ... performance as an outpatient pharmacist" on the basis of hearsay and that it lacks foundation. (*See* Pl. Obj. at 3.) The Court sustains Plaintiff's hearsay objection and finds the assertion inadmissible, as statements made by Plaintiff's "line supervisor in the inpatient pharmacy" are inadmissible hearsay and not offered against a party opponent who made the statement. *See* Fed. R.Evid. 801(d)(2).

Plaintiff objects to a portion of a sentence in paragraph 9 of the Werdebaugh Declaration, *i.e.,* "which places an undue burden on the pharmacy service" on the basis that it lacks foundation and personal knowledge. (*See* Pl. Obj. at 3.) The Court sustains both objections, as the declarant has not established the declarant's personal knowledge of the staffing needs of the pharmacy service. *See* Fed.R.Evid. 602.

### 2. Objections to Defendant's SUF's

The Court sustains Plaintiff's objections to the following of DSUFs on the basis that the cited evidence does not support the purported statement of fact: ¶¶ 3, 14, 19, 28, 33, 34, and 35. As to DSUF ¶ 3, the Court finds a portion of the fact is supported by the cited evidence, but the statement "but desired it as a personal educational goal" is not supported; accordingly, the Court will not consider that portion. Likewise, as to DSUF ¶ 28, the Court finds a portion of the fact is supported by the cited evidence, but the statement "despite a direct request from a Privacy Officer" is not supported and the Court will not consider it. Finally, as to DSUF ¶ 35, the Court finds portions of the fact is supported by the cited evidence: "At the time, Plaintiff, as an outpatient pharmacist;" and "could not be properly supervised or evaluated [by] the inpatient pharmacy supervisor."

The Court overrules Plaintiff's objections to DSUFs ¶¶ 7, 12, 40, and 41.

### B. Defendant's Objections

Defendant objects to portions of the Maureen Uche–Uwakwe Declaration.

Defendant objects to paragraph 2 of the Uche–Uwakwe Declaration on the basis of relevance, undue prejudice, and that the assertions contained therein are outside the scope of the EEO complaints that gave rise to the present action. (*See* Def. Evid. Obj. at 1.) The Court sustains Defendant's relevance objection as to the following portion of paragraph 2 and finds this portion inadmissible: "My first line supervisor at the ... apply for a permanent, full-time pharmacist." The Court overrules Defendant's remaining objections to this paragraph.

Defendant objects to paragraph 3 of the Uche–Uwakwe Declaration on the basis of relevance, undue prejudice, speculation, and lacks foundation. (*See* Def. Evid. Obj. at 1–2.) The Court sustains Defendant's relevance objection as to the following portion of paragraph 3 and finds this portion inadmissible: "I was trained as an inpatient pharmacist ... Monday through Friday." The Court overrules Defendant's remaining objections to this paragraph.

Defendant objects to paragraph 4 of the Uche–Uwakwe Declaration on the basis of relevance, undue prejudice, hearsay, and that the assertions contained therein are outside the scope of the EEO complaints that gave rise to the present action. (*See* Def. Evid. Obj. at 2.) The Court overrules Defendant's objections to this paragraph.

Defendant objects to paragraph 14 of the Uche–Uwakwe Declaration on the basis that Plaintiff did not lay sufficient foundation for her assertion that she "know[s] you can be disciplined or lose your job if you are AWOL, especially for that long a

time." (*See* Def. Evid. Obj. at 2–3.) Although Plaintiff did not expressly identify her basis for this understanding, the Court overrules the objection because Plaintiff has been employed at LLVAMC for over ten years and this information reasonably falls within the purview of employees, especially long term employees such as Plaintiff. Defendant did not object to Plaintiff's assertion in this paragraph about the statement made to Plaintiff by Maryann Chamberlain, identified as a payroll supervisor. (*See* Uche–Uwakwe Decl. at ¶ 14 ("Ms Chamberlain advised me ... had been for approximately one month.").) The Court nevertheless finds this statement admissible for its non-hearsay purpose of effect on the listener. *See* Fed. R.Evid. 801(c)(2); *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir.1991). The statement is not admissible for the truth of the matter asserted.

Defendant objects to paragraph 17 of the Uche–Uwakwe Declaration on the basis that it lacks personal knowledge, contains hearsay, is irrelevant, and unduly prejudicial. (*See* Def. Evid. Obj. at 3.) The Court sustains Defendant's hearsay and lack of personal knowledge objections and finds the entire paragraph inadmissible.

Defendant objects to paragraph 18 of the Uche–Uwakwe Declaration on the basis that it lacks personal knowledge, contains speculation, hearsay, and improper lay opinion, is irrelevant and unduly prejudicial, and that the assertions contained therein are outside the scope of the EEO complaints that gave rise to the present action. (*See* Def. Evid. Obj. at 4.) The Court sustains Defendant's lack of personal knowledge and speculation objections as to the following inadmissible assertion: "Ms. Dahlan and Dr. Kawahara also encouraged Mr. Anthony Fazio to falsify a Report of Contact against me." The

Court overrules Defendant's remaining objections to this paragraph.

Defendant objects to paragraph 20 of the Uche–Uwakwe Declaration on the basis that it lacks personal knowledge and foundation, contains hearsay, mischaracterizes a document that speaks for itself, and lacks authentication for the attached Exhibit G. (*See* Def. Evid. Obj. at 4–5.) The Court sustains Defendant's lack of personal knowledge and foundation objections as to the following portions of the paragraph which the Court considers inadmissible: "After intervention ... and substitute then with LWOP" and "Dr. Kawahara issued his own email ... by EEO Program Specialist Tana Moreland."[6] Moreover, the Court sustains Defendant's authentication objection to portions of Plaintiff's Exhibit G, as Plaintiff did not write or receive the email dated June 4, 2009 from Kawahara or the email dated June 19, 2009 from Samina Sam, and Plaintiff cannot attest to those emails' authenticity. *See Orr*, 285 F.3d at 774 ("a document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it, used it, or saw others do so." (internal quotations and citations omitted)). Accordingly, the Court does not find those portions of Plaintiff's Exhibit G admissible. The Court overrules Defendant's remaining objections to this paragraph.

Defendant objects to paragraph 21 of the Uche–Uwakwe Declaration on the basis that it lacks personal knowledge and foundation, contains hearsay, mischaracterizes a document that speaks for itself, and lacks authentication for the attached Exhibit G. (*See* Def. Evid. Obj. at 5–6.) The Court sustains Defendant's lack of foundation and personal knowledge objections to the following portion of the para-

graph, which the Court finds inadmissible: "Dr. Kawahara's email ... at their own facility." As stated *supra*, the Court has already sustained Defendant's authentication objection to the relevant portions of Plaintiff's Exhibit G. The Court overrules the remaining objections to this paragraph.

Defendant objects to paragraph 22 of the Uche–Uwakwe Declaration on the basis that it lacks personal knowledge and foundation, contains hearsay, mischaracterizes a document that speaks for itself, and lacks authentication for the attached Exhibit G. (*See* Def. Evid. Obj. at 6–7.) Again, as stated *supra*, the Court has already sustained Defendant's authentication objection to the relevant portions of Plaintiff's Exhibit G. The Court overrules Defendant's hearsay objections as to the statements made by Cory Werdebaugh because her Declaration filed in support of the Motion provides sufficient foundation regarding her position and job responsibilities that show she could be considered an agent of Defendant for purposes of finding her statements in this regard to be vicarious admissions. *See* Fed.R.Evid. 801(d)(2)(D); *see also Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1094 (1st Cir.1995) (nature of declarant's position within organization used to determine whether or not her statement is admissible as organization's vicarious admission); *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1208–09 (10th Cir.2010) (employee's statement considered admission against employee if "the employee was involved in the decisionmaking process affecting the employment action at issue"); cf. *Jacklyn v. Schering–Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 927–28 (6th Cir.1999) (statement made by defendant's district manager who was not plaintiff's

6. "Email" is shorthand for electronic mail, which is a method of exchanging digital messages from an author to one or more recipients.

direct supervisor and was not involved in negative appraisals of plaintiff's performance was not within scope of agency or employment). Moreover, the statements at issue were made during Werdebaugh's employment, concerned matters within the scope of her employment relationship, *i.e.*, human resources matters concerning an employee dispute, and Plaintiff is offering these statements against Defendant; the statements are not hearsay and are admissible. *See* Fed.R.Evid. 801(d)(2)(D); *see also McDonough v. City of Quincy*, 452 F.3d 8, 21 (1st Cir.2006) ("The relevant inquiry [for purposes of Federal Rule of Evidence 801(d)(2)(D) ] is whether the employee's statement was made within the scope of employment.").

The Court sustains Defendant's hearsay objection as to the statements made by Sam Maze contained in paragraph 22 and finds the following statement inadmissible: "EEO Manager, Sam Maze advised me that I should confirm in writing that it would be temporary." Plaintiff provides the Court only with Maze's job title, which is ambiguous as to his responsibilities and job duties. In doing so, Plaintiff has not met her burden to provide evidence that Maze can be considered an agent of Defendant or that his statement was made within the scope of his employment, sufficient to impute this statement as a non-hearsay admission against Defendant. *See United States v. Chang*, 207 F.3d 1169, 1176 (9th Cir.2000) (proponent of the evidence has the burden to demonstrate its admissibility); *Bourjaily v. United States*, 483 U.S. 171, 176, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (applying preponderance of the evidence standard to evaluation of evidence proffered as admissible under Federal Rule of Evidence 801(d)(2)); *United States v. Bonds*, 608 F.3d 495, 507 (9th Cir.2010). The Court overrules the remaining objections to this paragraph.

Defendant objects to paragraph 33 of the Uche–Uwakwe Declaration on the basis that it lacks foundation for Plaintiff's assertion that her "privacy was violated." (*See* Def. Evid. Obj. at 7–8.) The Court overrules the objection.

Defendant objects to paragraph 35 of the Uche–Uwakwe Declaration on the basis that it lacks foundation and misstates Plaintiff's prior testimony "regarding the date AWOL designation was changed to LWOP." (*See* Def. Evid. Obj. at 8.) The Court overrules the objections. In fact, Defendant's objection about the misstatement of Plaintiff's prior testimony is misplaced, as this paragraph of the Declaration does not contain any assertions regarding when Plaintiff's AWOL designation was changed to LWOP. (*See* Uche–Uwakwe Decl. ¶ 35.)

Defendant objects to paragraph 41 of the Uche–Uwakwe Declaration on the basis that it lacks personal knowledge and foundation and contains hearsay. (*See* Def. Evid. Obj. at 8–9.) The Court overrules Defendant's objections to this paragraph. Although Plaintiff did not provide the Court with Samineh Sam's job responsibilities, she indicated Sam's job title was the "outpatient supervisor." The Court infers from Sam's job title that her statements to Plaintiff describing the staffing in the outpatient pharmacy were made within the scope of her employment and are not hearsay. *See* Fed.R.Evid. 801(d)(2)(D).

Defendant objects to paragraph 42 and 43 of the Uche–Uwakwe Declaration on the basis of relevance, undue prejudice, and that the assertions contained therein are outside the scope of the EEO complaints that gave rise to the present action. (*See* Def. Evid. Obj. at 9–10.) First, the following statement contained in paragraph 42 is inadmissible hearsay and the Court will not consider it: "and with the agreement of management at the recom-

mendation of the Administrative Board of Investigation." The Court sustains Defendant's relevance objection as to the following portions of paragraphs 42 and 43 which is inadmissible: "I tried several times . . . of other pharmacy employees" (paragraph 42); and "Ms. Church–Harris insulted me . . . and the Associate Director regarding her harassment of me" (paragraph 43). The remaining portions of paragraphs 42 and 43 are relevant to Plaintiff's claim for retaliation here, as they demonstrate the impact of her reassignment in February 2010 to the outpatient pharmacy which would have required her to work with individuals with whom she had concerns due to their past interactions. (*See* Uche–Uwakwe Decl. ¶¶ 42, 43.)

The Court finds, however, the remaining assertions in paragraphs 42 and 43 to be irrelevant and unduly prejudicial, as this Court has entered summary judgment against Plaintiff on her claims for hostile work environment arising from those interactions with the outpatient pharmacy staff in a related action, resulting in final judgment on the merits, which the Ninth Circuit has affirmed. *See Uche–Uwakwe v. Nicholson*, No. 5:05CV983(VAP) (C.D.Cal. Mar. 30, 2010); *Uche–Uwakwe v. Nicholson*, 473 Fed.Appx. 544 (9th Cir. 2012) (finding plaintiff failed to raise a triable issue of fact as to her claims for failure to promote and hostile work environment, but finding she raised a triable issue of fact as to her claim for disparate treatment and retaliation). The assertions contained in this paragraph concern the same "transactional nucleus of facts" as the Court has previously determined on the merits in the related litigation. *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir.1982) (finding subsequent claim brought on the same cause of action that had previously been determined in a final judgment on the merits to be barred by doctrine of res *judicata* ).

Moreover, the parties to the related action are the same as here and the factual basis for Plaintiff's hostile work environment claim concern the same facts as those previously adjudicated in the related action. *See Blonder–Tongue Lab. v. Univ. of Ill. Found.*, 402 U.S. 313, 323–24, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (discussing three factors necessary for res *judicata* to apply, *i.e.*, identity of claims, final judgment on the merits, and identity or privity between parties). Accordingly, these assertions are not admissible here, as they are barred by the doctrine of res judicata. *See Western Radio Serv. Co., Inc. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir.1997) ("Res *judicata*, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action").

Defendant objects to paragraph 44 of the Uche–Uwakwe Declaration on the basis of relevance, undue prejudice, and that the assertions contained therein are outside the scope of the EEO complaints that gave rise to the present action. (*See* Def. Evid. Obj. at 11.) The Court overrules Defendant's objections, but finds the following portions to be inadmissible hearsay, as Plaintiff fails to demonstrate that any statements quoting investigation materials or statements made by the Administrative Board of Investigation are admissible: "Dr. Kawahara had charged that I altered . . . Although I was exonerated;" and, "It took five months . . . given diversity training."

Defendant objects to paragraph 51 of the Uche–Uwakwe Declaration on the basis of relevance, undue prejudice, that the assertions contained therein are outside the scope of the EEO complaints that gave rise to the present action, and misstates a document that speaks for itself. (*See* Def. Evid. Obj. at 11–12.) The Court overrules

Defendant's objections to this paragraph. Although some of the assertions contained in this paragraph concern events preceding the filing of the EEO complaints at issue here, the assertions are directly relevant to Plaintiff's claim of unlawful retaliation and provide necessary evidentiary context to her claim.

Defendant purports to object to portions of paragraph 52 of the Uche–Uwakwe Declaration, but fails to articulate any bases for his objection. Accordingly, the Court will not rule on objections not properly before the Court.

Defendant objects to paragraph 56(a)-(d) of the Uche–Uwakwe Declaration on the basis of relevance, undue prejudice, and that the assertions contained therein are outside the scope of the EEO complaints that gave rise to the present action. (*See* Def. Evid. Obj. at 13.) The Court overrules Defendant's objections as to paragraph 56(a), (c), and (d) as none of these sub-paragraphs contain information previously litigated before this Court in a related action. The Court sustains Defendant's relevance and undue prejudice objections to paragraph 56(b), however, because it contains factual assertions already adjudicated by this Court and affirmed by the Ninth Circuit in a related action. *See UcheUwakwe v. Nicholson,* No. 5:05CV983(VAP) (C.D.Cal. Mar. 30, 2010); *Uche–Uwakwe,* 473 Fed.Appx. 544 (9th Cir.2012). As discussed *supra,* these assertions are barred by res *judicata. See Glickman,* 123 F.3d at 1192. The Court overrules Defendant's remaining objections to this paragraph.

## C. Other Evidentiary Issues

As stated *supra,* the Court can "only consider admissible evidence in ruling on a motion for summary judgment." *See Orr,* 285 F.3d at 773; *Cristobal v. Siegel,* 26 F.3d 1488, 1494 (9th Cir.1994); *Canada v.*

*Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir.1987).

## 1. Defendant's Evidence

In its independent review of the admissibility of the evidence proffered by Defendant, the Court has found the following issues:

DSUF ¶ 6: The following portion is not supported by the cited evidence and the Court will not consider it: "in May 2009."

DSUF ¶ 8: The following portion is not supported by the cited evidence and the Court will not consider it: "for the days between May 5, 2009 and June 2, 2009."

DSUF ¶ 12: It appears the word "employee" is missing after "then a Loma Linda VAMC." The Court construes this fact to contain the missing word for completeness.

DSUF ¶ 17: The following portion is not supported by the cited evidence and the Court will not consider it: "the removal of the EEO file constituted a violation of Loma Linda VAMC's privacy policies."

DSUF ¶ 18: This fact is not supported by sufficient evidence, as the Court has found the cited Werdebaugh Declaration testimony to be inadmissible hearsay, and the testimony cited from Defendant's Exhibit 10 provides no context about the topic of the witness's testimony sufficient to lay requisite foundation.

DSUF ¶ 24: The cited evidence does not support the factual assertion made herein and the Court will not consider it.

DSUF ¶ 30: The following portion is not supported by the cited evidence and the Court will not consider it: "that would have to be reported in a privacy breach notification database."

DSUF ¶ 36: The cited evidence does not support the factual assertion made herein and the Court will not consider it.

DSUF ¶ 37: The following portion is not supported by the cited evidence and the Court will not consider it: "for anxiety." In addition, there appears to be a typographical error contained in this fact; it appears "Monday, February 15, 2013" should instead read "Monday, February 15, 2010."

For the foregoing reasons, the Court does not consider the following DSUFs to be sufficiently supported by admissible evidence and the Court will not consider them for purposes of deciding this Motion: DSUF 9191 14, 18, 19, 24, 31, 33, 34, and 36. Moreover, the Court considers only portions of the following DSUFs, for the reasons stated above: DSUF 9191 3, 6, 8, 17, 28, 30, and 37.

## 2. Plaintiff's Evidence

In its independent review of the admissibility of the evidence proffered by Plaintiff, the Court has found the following issues:

*Uche–Uwakwe Decl. ¶ 26:* The following statement is inadmissible hearsay and the Court will not consider it: "My doctor also suggested that I see psychological counseling." In addition, the following statement lacks foundation and is not admissible: "He filled out a disability form ... was also without pay."

*Uche–Uwakwe Decl. ¶ 27:* The following statement is inadmissible hearsay and the Court will not consider it: "Meanwhile, I learned from talking to pharmacists and management at other VA facilities ... or temporary shift changes."

*Uche–Uwakwe Decl. ¶ 35:* The following statement is inadmissible speculation and the Court will not consider it: "Dr. Sam knew what outpatient work I was performing ... conducted my performance reviews."

*Uche–Uwakwe Decl. ¶ 47:* The following statement is inadmissible hearsay and the

Court will not consider it: "At my primary physician's recommendation."

*Uche–Uwakwe Decl. ¶ 49 & Plaintiff's Exhibits N and O:* The following statements lack foundation and personal knowledge and the Court will not consider them: "On March 26, 2010, my treating physician ... letter is attached as Exhibit O." Moreover, Plaintiff's Declaration testimony contained in this paragraph cannot provide sufficient authentication for Plaintiff's Exhibits N and O (purportedly letters from her treating physicians), as she does not attest to writing them, signing them, using them, seeing others use them, or receiving them. *See Orr,* 285 F.3d at 774; Fed. R.Evid. 901(b)(1).

*Uche–Uwakwe Decl. ¶ 56(c):* The following statement is inadmissible hearsay: "Ms. Connie Morrison ... as ordered by my doctor." *See* Fed.R.Evid. 801(d)(2)(D). Plaintiff has not provided evidence that Morrison's statements are admissible here. *See Chang,* 207 F.3d at 1176.

*Uche–Uwakwe Decl. ¶ 56(d):* The following statement is inadmissible hearsay: "Mr. Maze reminded him that I was on disability and to cease the harassment." As stated supra, Plaintiff has not met her burden to provide evidence that Maze's statements are admissible. *See Chang,* 207 F.3d at 1176; *Bourjaily,* 483 U.S. at 176, 107 S.Ct. 2775; *Bonds,* 608 F.3d at 507; Fed.R.Evid. 801(d)(2)(D).

*PSUF ¶ 2:* The following portion is unsupported by the cited evidence and the Court will not consider it: "Plaintiff had no problems at work until."

*PSUF ¶¶ 18, 23, 26:* Exhibit 17 to the Werdebaugh Deposition does not support these PSUFs as the document lacks requisite authentication and cannot be considered by the Court. *See* Fed.R.Evid. 901(b); *Orr,* 285 F.3d at 774. The other cited evidence supports these facts suffi-

ciently. As to PSUF ¶ 26, however, the cited Werdebaugh deposition testimony does not support the factual assertion made therein, but the remaining evidentiary support cited, i.e., the Uche–Uwakwe Declaration, sufficiently supports the factual assertions contained in PSUF ¶ 26.

*PSUF ¶ 36:* The following portion is unsupported by the cited evidence and the Court will not consider it: "and told another of Plaintiff's supervisors, Elisa Almera, that Plaintiff . . . to Plaintiff's EEO activity." The cited Maze testimony does not support the factual assertions contained in this fact.

*PSUF ¶¶ 39, 40, 54, 94, 101:* The cited evidence does not support these facts and the Court will not consider them.

*PSUF ¶ 41:* The cited Kawahara deposition testimony does not support this factual assertion; the other cited evidence, however, sufficiently supports this fact.

*PSUF ¶ 51:* The following portion contains inadmissible hearsay and the Court will not consider it: "Plaintiff's doctor suggested that she seek psychological counseling."

*PSUF ¶ 55:* This fact is duplicative of PSUF ¶ 35.

*PSUF ¶¶ 56, 57:* These facts contain statements made by Edna Dahlan to Plaintiff which ordinarily would be considered inadmissible hearsay. The Court infers, however, from Dahlan's title as the inpatient supervisor, that her statements to Plaintiff about scheduling a meeting were within the scope of her employment and are not hearsay. *See* Fed.R.Evid. 801(d)(2)(D).

*PSUF ¶ 59:* This fact contains statements made to Plaintiff by a canteen employee, which ordinarily would be considered inadmissible hearsay. The Court infers, however, from the employee's title that the statements to Plaintiff about the location of her EEO file were made within the scope of the employee's employment and are not hearsay. *See* Fed. R.Evid. 801(d)(2)(D).

*PSUF ¶¶ 67–68, 70:* These facts contain hearsay statements made by Craig Curtis, an information security officer. Plaintiff has not met her burden to provide the Court with evidence of Curtis's job duties to demonstrate that his statements are not hearsay and were made within the scope of his employment. *See Chang,* 207 F.3d at 1176. Plaintiff's counsel argued at the hearing on the Motion that the Court should infer from the facts that Curtis called the February 12, 2010 meeting and had the apparent authority to issue Plaintiff a privacy violation ticket that Curtis was employed by LLVAMC and that his statements made were within the scope of his employment. The Court disagrees. Viewing all the admissible evidence submitted by both parties, the record before the Court contains no information about whether or not Curtis was employed by LLVAMC and whether or not his statements were made within the scope of his employment with LLVAMC. Accordingly, the Court does not find Curtis's statements to Plaintiff during the February 12, 2010 meeting to be relevant to her claims here, as Plaintiff has not met her burden to establish, as necessary foundation, that Curtis was employed at LLVAMC when he made the statements.

As to PSUF ¶ 68, the cited Kawahara deposition testimony at 144:11–145:1, 145:9–20 and the Dahlan deposition testimony at 107:9–108:4 do not support the contention in this fact, but the other cited evidence sufficiently supports it.

As to PSUF ¶ 70, the cited evidence does not support the inclusion of "and Dr. Kawahara" in this fact. Moreover, the Kawahara testimony cited does not sup-

port the factual assertions contained in this fact.

*PSUF ¶ 77:* The cited evidence, i.e., Exhibit 35 to the Werdebaugh deposition, lacks necessary authentication and cannot be considered by the Court. *See* Fed. R.Evid. 901(b); *Orr,* 285 F.3d at 774. Accordingly, the Court will not consider this fact.

*PSUF ¶ 79:* The following statement is inadmissible hearsay and the Court will not consider it: "at her primary care physician's recommendation."

*PSUF ¶ 82:* As discussed supra, the cited evidence, i.e., Exhibit 35 to the Werdebaugh deposition, lacks necessary authentication and cannot be considered by the Court. *See* Fed.R.Evid. 901(b); *Orr,* 285 F.3d at 774. Accordingly, the Court will not consider this fact, as it is not supported by admissible evidence.

*PSUF ¶¶ 86–93:* These facts contain improper legal conclusions and argument, instead of statements of fact supported by admissible evidence. The Court will not consider the improper conclusions and arguments contained in these facts.

*PSUF ¶ 96:* This fact is irrelevant and contains inadmissible hearsay. Accordingly, the Court will not consider this fact.

*PSUF ¶ 98:* The cited Uche–Uwakwe Declaration testimony does not support this fact, as the testimony lacks foundation; the Court, however, finds the other cited evidence sufficiently supports this fact.

*PSUF ¶ 103:* The following statement is inadmissible hearsay and the Court will not consider it: "caused by work-related stress and anxiety."

*PSUF ¶ 104:* This fact contains only inadmissible hearsay and the Court will not consider it.

*PSUF ¶ 107:* All of the cited evidence, except for paragraph 56 of the Uche–Uwakwe Declaration, does not support the assertions contained in this fact. Moreover, the following statements are unsupported by the cited evidence and the Court will not consider them: "There is substantial evidence on which a trier of fact could find that;" "and that he has failed and refused to investigate Plaintiff's claims of harassment;" and "promoting non-Blacks who were less qualified than Plaintiff."

For the foregoing reasons, the Court does not consider the following PSUFs to be sufficiently supported by admissible evidence and the Court will not consider them for purposes of deciding this Motion: PSUF ¶¶ 39, 40, 54, 55, 75, 76, 82, 94, 96, 101, and 104. Moreover, the Court considers only portions of the following PSUFs, for the reasons stated above: PSUF ¶¶ 2, 36, 51, 67–68, 70, 79, 86–93, and 107.

## IV. UNCONTROVERTED FACTS

The following material facts are supported adequately by admissible evidence and uncontroverted. They are "admitted to exist without controversy" for the purposes of this Motion. *See* Local Rule 56–3.

Plaintiff has worked as a pharmacist at the LLVAMC since 1999. (DSUF ¶ 1; PSUF ¶ 1.) Dr. Brian Kawahara ("Kawahara") has been the Chief of Pharmacy Services at LLVAMC since approximately September 2000. (PSUF ¶ 2.)

### A. Pharm. D. Degree Clinical Rotations

In July 2001, Kawahara told Plaintiff that one of the reasons why he did not select her for a promotion to a GS–12 clinical pharmacist position was because she did not have a Pharm. D. degree. (PSUF ¶ 4.) Although it was not a requirement of her job as a pharmacist at

LLVAMC, Plaintiff decided to enroll in a Pharm. D. degree program through the University of Kansas to improve her chances of getting a promotion in the future. (PSUF ¶ 5; DSUF ¶¶ 3, 4.) In order to obtain the Pharm. D. degree, Plaintiff was required to complete several clinical rotations. (PSUF ¶ 9.) Plaintiff arranged to complete a clinical rotation at LLVAMC, after she worked with the Associate Chief of Staff of Education, Dr. John Byrne, to execute an "Affiliation Agreement" between LLVAMC and the University of Kansas in February 2009. (PSUF ¶ 10–11.)

Plaintiff's direct supervisor, Edna Dahlan, approved Plaintiff for one day, or eight hours, of leave per week beginning February 5, 2009 for Plaintiff's clinical rotation. (PSUF ¶ 6.) Per Plaintiff's Clerkship Guide for the Pharm. D. degree program, clinical rotations were required to be completed within four months. (PSUF ¶ 19.) In March 2009, Plaintiff realized that she would be unable to complete her rotation by her school's deadline at the rate of eight hours of clinical rotation per week. (PSUF ¶ 7.)

Having exhausted her annual leave, Plaintiff submitted to Dahlan a request for Leave Without Pay ("LWOP") for 40 hours per week, so she could complete her rotation that began in February 2009 by the end of April 2009. (PSUF ¶¶ 8, 12.) LWOP is an unpaid, approved absence that may be used instead of paid leave, but requires supervisory approval in advance. (DSUF ¶ 9.) Approval of LWOP is a matter of administrative discretion. (DSUF ¶ 10.) LLVAMC employees were permitted to submit LWOP requests for educational purposes. (DSUF ¶ 11.) If the request for LWOP was for a period exceeding 30 consecutive calendar days, then the LLVAMC employee was required to submit a written memorandum for the request, along with supporting documentation to her service chief. (DSUF ¶ 12.) The AFGE Master Agreement provides that LWOP is not discretionary "when requested by an employee who has suffered an incapacitating job-related injury or illness and is waiting adjudication of a claim for employee compensation by the Office of the Workers' Compensation Program. . . ." (PSUF ¶ 102.)

Plaintiff's request for LWOP required approval by Kawahara. (PSUF ¶ 8.) Plaintiff followed up with Kawahara to determine the status of her request for LWOP, and he stated he could not approve her request because she sought over 30 days of LWOP and that her request had to be approved by the Associate Director. (PSUF ¶ 16.) Kawahara was under the impression that Plaintiff was going to complete her clinical rotation by the end of April 2009. (DSUF ¶ 7.) Kawahara did not ask Plaintiff for any documentation to substantiate her request at that time. (PSUF ¶ 22.) Plaintiff then inquired of the acting Associate Director about her request for LWOP and was told that pharmacy management would only allow eight hours per week for the clinical rotation and advised Plaintiff to speak with Human Resources in the event she needed further assistance. (PSUF ¶ 17.) Plaintiff then consulted with Human Resources, specifically Cory Werdebaugh, to seek assistance with her request for LWOP so she should complete her clinical rotation timely. (PSUF ¶ 18–20.) Plaintiff submitted supporting documentation to Werdebaugh to Werdebaugh's satisfaction that Plaintiff's involvement in the Pharm. D. program was legitimate and her request for LWOP was justified. (See Curd Decl., Exs. V–15 to V–19, 98:13–102:22; V–27, 139:19–140:5; X–12, 331:1–9.)

On April 13, 2009, Werdebaugh informed Plaintiff that she had worked with

Kawahara and he agreed to allow Plaintiff 16 hours of LWOP per week so she could complete her clinical rotation on time. (PSUF ¶ 23; DSUF ¶¶ 5, 6.) Plaintiff's resulting schedule was that she worked as a paid pharmacist on Mondays, Wednesdays, and Fridays, and performed her clinical rotation at LLVAMC on Tuesdays and Thursdays in LWOP status. (PSUF ¶ 24.)

On June 3, 2009, Plaintiff requested to switch her last clinical rotation day (Thursday, June 4, 2009) to Friday, June 5, 2009 because her preceptor would not be available that Thursday to complete Plaintiff's evaluation. (PSUF 91 25.) Kawahara required Plaintiff to submit supporting documentation for her leave request before he would approve her request to switch her regular LWOP clinical rotation day with her paid work day.[7] (PSUF ¶ 26.)

Without providing advance notice to Plaintiff or Human Resources, Kawahara designated Plaintiff as Absent Without Leave ("AWOL") from the beginning of May 2009 through June 2009. (DSUF 91 8; PSUF ¶¶ 27–29, 34.) Plaintiff had only been taking the leave which had been approved during that time. (PSUF ¶ 31.) AWOL status is an unapproved unpaid absence designation and is not a disciplinary action, but can be used to support a disciplinary action. (DSUF 9191 15–16.) Plaintiff complained to Kawahara via email and copied her direct supervisor, an EEO manager, and a payroll supervisor about this designation. (DSUF ¶ 13; PSUF ¶¶ 32–34.) Human Resources mediated the dispute and Kawahara changed Plaintiff's AWOL status to LWOP status shortly thereafter. (DSUF ¶ 13; PSUF ¶ 44.)

In June 2009, Werdebaugh informed Plaintiff that pharmacy management would not authorize LWOP for Plaintiff to perform clinical rotations either at the LLVAMC or at another facility. (PSUF ¶ 45.) This required Plaintiff to complete her clinical rotations during evenings and weekends at other facilities. (*Id.*) Werdebaugh offered to switch Plaintiff's shift at LLVAMC to graveyard or weekends, but Plaintiff declined because she believed the shift change would have been permanent. (DSUF ¶ 21; PSUF ¶¶ 46–47.)

Around June 2009, Kawahara approved an externship for Derek Abrams, a clerk in the Pharmacy Services department at LLVAMC, to be completed at the LLVAMC pharmacy. (Curd Decl., Ex. W–11, 12); Reply at 7 n. 6 ("It is undisputed that another Loma Linda pharmacy employee was allowed to conduct an externship for a technician license … at Loma Linda VAMC.") Abrams completed his externship at LLVAMC during evenings and weekends, outside of his scheduled work shifts. (*See* Supp. Cameron-Banks Decl., Ex. 14 at 182:2–22.)

Plaintiff filed an EEO complaint against Kawahara on August 24, 2009, complaining about his designation of her leave status as AWOL. (PSUF ¶ 48.)

Plaintiff experienced panic attacks and anxiety and she requested LWOP pursuant to the Family Medical Leave Act ("FMLA") in September 2009. (DSUF ¶ 22; PSUF ¶ 50.) Plaintiff's request was granted and she did not return to work until October 21, 2009. (DSUF ¶ 23; PSUF ¶¶ 50, 53.) Plaintiff completed her Pharm. D. degree clinical rotations offsite in December 2009. (PSUF ¶ 53.)

## B. Plaintiff's EEO Claim Folder

On February 10, 2010, a LLVAMC EEO manager inadvertently left Plaintiff's EEO

---

**7.** The parties do not submit admissible evidence to demonstrate whether or not Plaintiff was allowed ultimately to switch her shift and complete her clinical rotation on June 5, 2009. It appears to the Court, based on the totality of the admissible evidence submitted, however, that Plaintiff was able to complete her clinical rotation timely.

file in the LLVAMC canteen. (DSUF ¶ 25.) Plaintiff was alerted that her file was left in the canteen and she retrieved it. (DSUF ¶ 26; PSUF ¶¶ 59, 60.) Plaintiff reviewed the file's contents and found it contained her pending EEO claim filed August 22, 2009. (PSUF ¶ 60.) Plaintiff contacted her EEO representative and arranged to give the folder to her representative to give to her lawyer. (PSUF ¶ 61.)

The following day, Plaintiff received an email dated February 10, 2010 from Diana Gellentien, the acting EEO manager, telling her Gellentien had accidentally left Plaintiff's EEO folder in the canteen and asking Plaintiff to return it. (DSUF ¶ 27; PSUF ¶ 62.) Plaintiff replied that her attorney had the folder and that he would be contacting the VA director and the VA's counsel because of the privacy breach. (PSUF ¶ 63.) Plaintiff did not receive a response to her email. (PSUF ¶ 64.)

On February 12, 2010, while Plaintiff was in the mail room of the pharmacy at LLCAMC, Kawahara ordered her to go with him to Dahlan's office and escorted her there. (PSUF ¶ 65.) When Plaintiff arrived at Dahlan's office with Kawahara, Craig Curtis, an information security officer, and Dahlan were present. (PSUF ¶ 66.) At the meeting, Plaintiff explained that she had not obtained her file illegally and she would deliver the file back to LLCAMC once she was able to speak with her attorney. (PSUF ¶ 69.)

After the meeting was over, Plaintiff attempted to leave Dahlan's office but Kawahara closed the door and told her to stay behind with Dahlan. (PSUF ¶ 72.) Kawahara gave Plaintiff a memorandum notifying her of a reassignment to the outpatient pharmacy. (DSUF ¶ 32; PSUF ¶ 73.) The reason Kawahara gave for the transfer was that the outpatient department was understaffed. (PSUF ¶ 74.) Sam told Plaintiff that the outpatient pharmacy was not understaffed at that time and that no one had consulted her about transferring Plaintiff to the outpatient pharmacy. (PSUF ¶ 75.)

Plaintiff timely returned her EEO file to Curtis. (PSUF ¶ 71.)

Following the meeting, Plaintiff had a panic attack. (PSUF ¶ 77.) She believed that the panic attack was triggered because in 2003 she had been transferred out of the outpatient pharmacy because of harassment by her coworkers in the outpatient pharmacy. (*Id.*) Many of the same employees Plaintiff had problems with previously were still working in the outpatient pharmacy. (*Id.*) Plaintiff also believed her reassignment caused her to experience flashbacks to a 2003 investigation by the Administrative Board of Investigation ("ABOI"). (PSUF ¶ 78.) Plaintiff attempted to return to work on February 15, 2010 but felt too overwhelmed by stress and anxiety and went back on FMLA leave. (DSUF 91 37; PSUF ¶ 79.) Plaintiff remained on unpaid leave, including FMLA, LWOP, AWOL, and donated leave, from February 16, 2010 through January 31, 2012. (Werdebaugh Decl., Ex. 4–54 to 4–69.)

On March 22, 2010, Plaintiff filed an EEO complaint regarding her EEO file being left in the canteen, her treatment during the meeting with Curtis, Kawahara, and Dahlan about the file, and about her reassignment back to the outpatient pharmacy. (PSUF ¶ 80.)

### C. Plaintiff's Request for Advanced Sick Leave

Plaintiff requested advanced sick leave on March 26, 2010. (PSUF ¶ 81.) Kawahara denied the request on April 28 2010, stating in a letter to Plaintiff that he denied the request because Plaintiff did not meet the criteria for advanced sick leave

and due to workload and staffing requirements in the LLVAMC pharmacy. (DSUF ¶¶ 39, 40; PSUF ¶ 84.) Kawahara also stated in the letter that the leave was not justifiable given Plaintiff's continuing absences. (DSUF ¶ 41.) Also in the letter, Kawahara suggested that Plaintiff apply for a disability retirement or resign. (PSUF ¶ 85.) This was not the first time Kawahara suggested Plaintiff do so. (*Id.*)

Eight criteria must be considered for approval of an advanced sick leave request, according to LLVAMC policy. (PSUF ¶ 86.) Plaintiff believed she was unable to return to work because of her medical condition. (PSUF ¶ 87.) Plaintiff intended to return to duty and no one at the VA asked Plaintiff if she intended to do so. (PSUF ¶¶ 83, 88.) The LLVAMC Associate Director, Shane Elliott, admitted there was a need for Plaintiff's services on her return and that Plaintiff had not abused her leave. (PSUF ¶¶ 89, 92.) Plaintiff had worked at LLVAMC for more than one year, and Plaintiff had been rated "fully successful" by her supervisor, Dahlan. (PSUF ¶¶ 91, 93.)

On July 14, 2010, Plaintiff filed an EEO complaint for the denial of her request for advanced sick leave. (PSUF ¶ 95.)

### D.  Plaintiff's Return to Work

On August 5, 2011, Plaintiff advised Werdebaugh that she was available to return, but the LLVAMC would not allow her to return until January 3, 2012. (PSUF ¶ 97.) Although Plaintiff was available to return to work as of August 5, 2011, she was designated AWOL from April 22, 2010 through December 30, 2011 and as LWOP from January 3, 2012 through January 31, 2012 when she returned to work part-time. (PSUF ¶¶ 98, 105.) Plaintiff returned to full time work at LLVAMC starting on February 1, 2012. (PSUF ¶¶ 99, 105.)

Plaintiff filed a worker's compensation claim for job-related stress in November 2010, which was pending while she was on leave from November 2010 until after she returned to work in February 2012. (PSUF ¶ 100.)

Plaintiff was on FMLA leave from February 19, 2013 through April 8, 2013 due to panic attacks. (PSUF ¶ 106.)

Plaintiff is currently undergoing treatment for her psychological and physical problems. (PSUF ¶ 103.)

### E.  Kawahara's Other Treatment of Plaintiff

Kawahara has given preferred shifts to Asian staff rather than to Plaintiff or other non-Asian staff in the Pharmacy Services department, even after Plaintiff attained seniority. (PSUF ¶ 107.)

Plaintiff suffered what she describes as severe emotional distress that she believes has been caused by Kawahara's treatment of her, which she believes has gotten progressively worse after each time she reported his actions to the EEO or the Human Resources department. (PSUF ¶ 108.)

## V.  DISCUSSION

Defendant moves for summary judgment, or in the alternative summary adjudication, of Plaintiff's claims for retaliation and harassment/hostile work environment, both in violation of Title VII.

By way of background, courts analyze "Title VII claims through the burden-shifting framework of *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Hawn v. Exec. Jet Mgmt., Inc.,* 615 F.3d 1151, 1155 (9th Cir. 2010). "Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination." *Id.* To es-

tablish a prima facie case, the plaintiff "must offer evidence that 'give[s] rise to an inference of unlawful discrimination.'" *Id.* at 1156 (quoting *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1220 (9th Cir.1998) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981))). Alternatively, plaintiffs may establish their prima facie case "by providing direct evidence suggesting that the employment decision was based on an impermissible criterion." *E.E.O.C. v. Boeing Co.,* 577 F.3d 1044, 1049 (9th Cir.2009) (citing *Cordova v. State Farm Ins. Cos.,* 124 F.3d 1145, 1148 (9th Cir.1997)).

Once the plaintiff has established a *prima facie* case, the burden shifts and the defendant must "provide a legitimate, non-discriminatory reason for the employment action." *Vasquez v. Cnty. of Los Angeles,* 349 F.3d 634, 641 (9th Cir.2003). The defendant need offer only reasons that, "*taken as true,* would *permit* the conclusion that there was a non-discriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis in original). The defendant bears this burden of production but the burden of persuasion remains with the plaintiff: "The defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089 (citing *Bd. of Trs. of Keene State Coll. v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978)).

Once the defendant has provided a "legitimate, nondiscriminatory reason for the employment action," then the burden shifts back to the plaintiff to show that this articulated reason was "pretextual." *Vasquez,* 349 F.3d at 641. "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Id.* "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Id.*

At the summary judgment stage, "the district court must look at the evidence supporting the *prima facie* case, as well as the other evidence offered by the plaintiff to rebut the employer's offered reasons. And, in those cases where the *prima facie* case consists of no more than the minimum necessary to create a presumption of discrimination under *McDonnell Douglas,* plaintiff has failed to raise a triable issue of fact." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890 (9th Cir.1994) (clarifying the plaintiff's burden at the summary judgment stage as set forth in *Sischo–Nownejad v. Merced Cmty. Coll. Dist.,* 934 F.2d 1104, 1111 (9th Cir.1991)). "Thus, the mere existence of a *prima facie* case, based on the minimum evidence necessary to raise a *McDonnell Douglas* presumption, does not preclude summary judgment." *Id.*

The Court discusses each of Plaintiff's Title VII claims in turn.

## A. Retaliation

Defendant argues that Plaintiff cannot establish a *prima facie* case of Title VII retaliation or evidence sufficient to rebut Defendant's legitimate reasons for the employment decisions at issue here. (*See* Mot. at 6–11.)

Title VII prohibits adverse employment actions against an employee who has "opposed any practice made an unlawful employment practice by this subchapter [ (Title VII) ]" or who has "made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3. The analysis of a retaliation case is similar to that of a discrimination case under Title VII, where the plaintiff must establish a *prima facie* case of retaliation, then the employer must articulate a legitimate, non-retaliatory reason for its action, and the plaintiff must show that the employer's reason is a pretext. *See Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th Cir.2003). The elements of a *prima facie* case for retaliation are: (1) that the plaintiff engaged in a protected activity under Title VII, (2) that the employer subjected the plaintiff to an adverse employment action, and (3) that a causal link exists between the protected activity and the employer's action. *See Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 422 (9th Cir.2013); *Villiarimo v. Aloha Is. Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir.2002); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir.2000); *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987). Plaintiff must prove that the unlawful retaliation would not have occurred "but for" the alleged wrongful or discriminatory motivation. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013) ("a plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer").

As he does not have the burden of proof on this issue at trial, Defendant meets his burden on the Motion by pointing to the absence of evidence. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The burden now shifts to the Plaintiff to establish her *pri-* *ma facie* retaliation claim. *Stegall*, 350 F.3d at 1065.

### 1. Protected Activity

■ Plaintiff presents undisputed, admissible evidence that she engaged in protected activity here, by filing several EEO complaints about the treatment to which she was subjected by her employer. *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1196–97 (9th Cir. 2003) (protected activities include filing charge or complaint, providing testimony regarding employer's alleged unlawful practices, and engaging in activity intended to oppose employer's discriminatory practices); *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir.2007) (filing EEO claims is protected activity); (PSUF ¶¶ 35, 37, 48, 80, 95). Moreover, Plaintiff's evidence demonstrates that she complained to Human Resources about her treatment and spoke with an EEO counselor, which are protected activities under Title VII. *See Dawson v. Entek Intern.*, 630 F.3d 928, 936 (9th Cir.2011) (meeting with human resources and discussing mistreatment complaint is protected activity); *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir.1997) (holding that meeting with an EEO counselor is a protected activity); *see also McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 n. 19 (9th Cir.2004) (citing *Hashimoto* with approval); (see, *e.g.*, PSUF ¶¶ 20, 23, 32–34, 44–46, 63, 108.) Plaintiff meets her burden to establish this element of her *prima facie* retaliation claim.

### 2. Adverse Employment Action

Plaintiff presents admissible evidence that Defendant subjected her to the following employment actions that she claims are adverse:[8] (1) she was designated AWOL

---

**8.** As stated *supra*, Absent Without Leave ("AWOL") status is an unapproved unpaid absence and is not a disciplinary action, but can be used to support a disciplinary action.

in May 2009 (PSUF ¶¶ 28–35, 44); (2) she was denied LWOP status to perform clinical rotations at LLVAMC in June 2009 (PSUF ¶¶ 45–47); (3) in February 2010, she was threatened with a privacy violation reproval if she did not return her EEO file (DSUF ¶ 30; PSUF ¶¶ 60–67, 69); (4) she was reassigned in February 2010 to a department from which Plaintiff had been transferred previously because of negative issues with other employees who worked in that unit and her then-supervisor (PSUF ¶¶ 72–74, 77–78); and (5) she was denied advanced sick leave and was subsequently assigned AWOL status (PSUF ¶ 84–85, 97–99). (*See* Opp'n at 12–13.)

An adverse employment action is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir.2000). The Ninth Circuit has provided the following guidance with respect to whether an action taken by an employer against an employee constitutes an "adverse employment action" for purposes of a Title VII retaliation claim:

> We have found that a wide array of disadvantageous changes in the workplace constitute adverse employment actions. While "mere ostracism" by co-workers does not constitute an adverse employment action, *see Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 869 (9th Cir. 1996), a lateral transfer does. In *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987), we held that "[t]ransfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions.'" The *Yartzoff* decision was in line with our

earlier decision in *St. John v. Employment Development Dept.*, 642 F.2d 273, 274 (9th Cir.1981), where we held that a transfer to another job of the same pay and status may constitute an adverse employment action. Similarly, in *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir.1997), we found that the dissemination of an unfavorable job reference was an adverse employment action "because it was a 'personnel action' motivated by retaliatory animus." We so found even though the defendant proved that the poor job reference did not affect the prospective employer's decision not to hire the plaintiff: "That this unlawful personnel action turned out to be inconsequential goes to the issue of damages, not liability." *Id.* [¶] In *Strother*, we examined the case of an employee who, after complaining of discrimination, was excluded from meetings, seminars and positions that would have made her eligible for salary increases, was denied secretarial support, and was given a more burdensome work schedule. 79 F.3d at 869. We determined that she had suffered from adverse employment actions. *Id.*

*Id.* at 1241–43 (finding lateral transfers, unfavorable job references, and changes in work schedules to be "reasonably likely to deter employees from engaging in protected activity" and constituted adverse employment actions under Title VII).

#### a) AWOL status in May 2009

Plaintiff argues certain conduct, even if later reversed, may still constitute an adverse action prohibited by Title VII, that the jury could find the AWOL designation could dissuade a reasonable employee from engaging in protected activity, and the

(DSUF ¶¶ 15–16.) Leave Without Pay ("LWOP") is an unpaid, approved absence that may be used instead of paid leave, but

requires supervisory approval in advance. (DSUF ¶ 9.) Approval of LWOP is a matter of administrative discretion. (DSUF ¶ 10.)

designation damaged Plaintiff by causing her emotional distress and fear that she could lose her job. (*See* Opp'n at 13 (citing *Thompson v. Donahoe,* 961 F.Supp.2d 1017, 1030–31, 2013 WL 3286196 at *8 (N.D.Cal. Jun. 27, 2013), *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), and *Rivers v. Potter,* 2007 WL 4440880 (D.N.J. Dec. 18, 2007).) In response, Defendant argues the AWOL designation in May 2009 did not constitute an "adverse employment action" because it was temporary and corrected shortly after Plaintiff complained. (*See* Mot. at 7 (citing *Brooks v. City of San Mateo,* 229 F.3d 917, 930 (9th Cir.2000) and *Mendoza v. Sysco Food Serv. of Arizona, Inc.,* 337 F.Supp.2d 1172, 1184 (D.Ariz.2004)).)

This case more closely resembles the cases relied upon by Defendant, where no adverse employment action was found.

For example, Defendant relies on *Brooks v. City of San Mateo,* where the city employer scheduled the plaintiff to work an undesirable shift and denied her vacation preference. The Ninth Circuit held this conduct did not amount to an adverse employment action, noting that after the plaintiff complained about the shift change, the city "accommodated her preferences by allowing her to switch shifts and vacation dates with other employees." 229 F.3d at 930. Hence, given that the shift change was not final and the city had accommodated plaintiff's request for shift and vacation date changes, there was no adverse employment action. *Id.* *Brooks* is factually similar to this case.

■ Here, based on the undisputed evidence, Plaintiff obtained approval to complete a clinical rotation at LLVAMC starting in February 2009. (DSUF ¶¶ 5, 6; PSUF ¶¶ 6, 8, 12, 16, 18–20, 23, 24; Curd Decl., Ex. V–15 to V19, V–27, X–12.) Plaintiff abided by the approved schedule that accommodated her clinical rotation and only took leave that had been approved in advance. (PSUF ¶ 31.) Kawahara, however, designated Plaintiff as AWOL over a period of approximately one month without notifying Plaintiff. (DSUF ¶ 8; PSUF ¶¶ 27–29, 34.) Although AWOL (unpaid, unapproved leave) status, in and of itself, was not considered by LLVAMC to be a form of discipline, an AWOL designation could support discipline of the employee. (DSUF ¶¶ 15–16.) Plaintiff understood she could have been disciplined for being in AWOL status. (PSUF ¶ 30.) Plaintiff complained about her AWOL status when her clinical rotations had been approved for LWOP. (DSUF ¶ 13; PSUF ¶¶ 32–34.) Human Resources mediated the dispute and Kawahara corrected Plaintiff's records to reflect LWOP instead of AWOL status. (DSUF ¶ 13; PSUF ¶ 44.) As in *Brooks,* Kawahara's designation of Plaintiff as AWOL was not "final" and Kawahara eventually changed Plaintiff's status to LWOP after she complained. *Brooks,* 229 F.3d at 930.

Likewise, Defendant cites *Mendoza v. Sysco Food Serv. of Arizona, Inc.,* in which the District Court found an employer's change to the plaintiff's delivery route and subsequent criticism of the plaintiff for the length of time he spent to complete his deliveries, did not constitute an adverse employment action. *Mendoza,* 337 F.Supp.2d at 1184. In that case, Mendoza sought relief informally by meeting with Human Resources staff along with his union steward to lodge a complaint about his new delivery route. *Id.* The plaintiff apparently obtained relief through the employer's grievance procedure. *Id.* at 1177 ("He declares that he obtained relief only after he went to Sysco's Human Resources Center with his union steward and complained. Plaintiff does not explain exactly what relief he obtained.") There, relying

on *Brooks*, the Court reasoned that because the plaintiff had received relief through the employer's grievance procedure, the original change to the plaintiff's delivery route did not constitute an adverse employment action. *Id.* at 1184. Mendoza is not binding on this Court, but it is persuasive given the factual similarities to the present action, *i.e.*, as in *Mendoza*, Plaintiff employed informal internal grievances procedures to remedy the AWOL designation.

Plaintiff's cited authorities are distinguishable factually, as discussed below.

Plaintiff first relies on *Burlington Northern & Santa Fe Ry. Co. v. White*, where the Supreme Court found a plaintiff's 37–day suspension without pay constituted an adverse employment action, even though it was later rescinded and the plaintiff was provided back-pay. *Burlington*, 548 U.S. at 72–73, 126 S.Ct. 2405. The Supreme Court pointed out the severe burden imposed on the plaintiff and her family if forced to forego a paycheck for over one month, noting that "[a] reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former." *Id.* at 73, 126 S.Ct. 2405. In light of the severity of such a sanction, even if temporary, the Supreme Court found it qualified as an adverse employment action. *Id.*

Here, Plaintiff was not forced to forego a paycheck she otherwise would have been entitled to when she was in AWOL status; both AWOL and LWOP statuses are unpaid. In addition, although Plaintiff claims she suffered anxiety and emotional distress at the prospect of discipline for AWOL status, any emotional suffering was short-lived as Kawahara changed her status to LWOP shortly after she complained. Plaintiff's short span of emotional distress contrasts sharply with the *Burlington*

plaintiff's loss of income for more than one month.

Plaintiff next relies on *Thompson v. Donahoe*, in which the District Court found as follows:

The Ninth Circuit has not addressed the issue, and therefore this Court assumes without deciding that issuing Plaintiff a letter of warning was an adverse employment action. Defendant likewise cites no case law for the proposition that sending an employee a notice of suspension is not an adverse employment action where the suspension was later rescinded. The Court assumes that this also constitutes an adverse employment action.

961 F.Supp.2d at 1030–31, 2013 WL 3286196, at *8. Aside from the fact that *Donahoe* is not binding precedent, the Court finds this case of little authority on the point relied upon by Plaintiff for two reasons. First, the *Donahoe* court assumed without actually deciding the issue of whether a suspension notice that was later withdrawn constituted an adverse employment action. Second, *Donahoe* is further distinguishable from the present action, as Plaintiff was never issued a suspension notice, which is a form of discipline. Rather, Plaintiff's AWOL designation was not, in and of itself, a form of discipline, although it could be used to support discipline in the future. (DSUF 9191 15–16.) Finally, the Court is not persuaded to adopt *Donahoe's* reasoning, as Defendant has cited a binding Ninth Circuit case that is analogous factually, *i.e.*, *Brooks*.

Plaintiff also cites the non-binding authority of *Rivers v. Potter*, a case decided by the New Jersey District Court. In *Rivers*, the plaintiff had been issued a warning letter that was later reduced to an official discussion after the plaintiff complained. *Rivers*, 2007 WL 4440880, at *1, *9. Citing *Burlington*, the District Court

found "[t]he letter of warning ... constitutes the kind of materially adverse employment action that could support a retaliation claim under Title VII" because it could "cause an employee to reconsider bringing an EEO charge." *Id.* at *9. This case is of little, if any, persuasive value here.

As Plaintiff has not presented the Court with any authority dictating a finding that her AWOL designation should be considered an adverse employment action, the Court is compelled to follow the Ninth Circuit's decision in *Brooks.* Accordingly, Plaintiff has not met her burden as to this element of her *prima facie* retaliation claim. *See Brooks,* 229 F.3d at 930; *see also Mendoza,* 337 F.Supp.2d at 1184.

### b) Denial of LWOP for clinical rotations after June 2009

Plaintiff argues Defendant unreasonably denied her request for LWOP status to complete her clinical rotations at LLVAMC after June 2009: she contends a jury could reasonably find such an action would dissuade a reasonable employee from engaging in protected activity. (*See* Opp'n at 13 (citing *Burlington,* 548 U.S. at 69, 126 S.Ct. 2405).) Defendant argues "[d]enial of Plaintiff's preferred abbreviated work schedule to perform her personal educational pursuits at Loma Linda VAMC during her preferred time does not constitute a[n][ ] [adverse] employment [ ] action." (Mot. at 7.)

As an initial matter, *Burlington* does not support Plaintiff's argument. Plaintiff relies on the following statement in the *Burlington* decision: "Excluding an employee from a weekly training lunch that contributes significantly to the employee's professional development, might well deter a reasonable employee from complaining about discrimination." (Opp'n at 13–14.) First, this language is *dicta* and is not binding precedent. Second, the scenario contemplated by the Supreme Court's hypothetical is entirely distinguishable from the facts presented here. Plaintiff was not excluded from professional development opportunities available to other employees. In fact, the undisputed evidence shows that Plaintiff was one of two employees at LLVAMC who were allowed to complete professional training at LLVAMC. Accordingly, *Burlington* does not support Plaintiff's argument.

In fact, applying *Burlington's* reasonable employee standard, a reasonable employee would not expect her employer to allow her to work part-time for approximately one year—the length of time it took Plaintiff to complete her Pharm D. clinical rotations—so that she could complete an advanced degree and conduct clinical rotations on site where she worked for pay. *Burlington,* 548 U.S. at 69, 126 S.Ct. 2405. Although Plaintiff is correct that LLVAMC employees were permitted to seek LWOP for educational attainments (DSUF ¶ 11), those requests were not granted automatically and were subject to the discretion of management (DSUF ¶ 9, 10). Moreover, Werdebaugh testified at her deposition that she intervened to assist Plaintiff with her request to do one clinical rotation at LLVAMC and never indicated to Plaintiff that she would be able to make arrangement for any additional rotations. (*See* Supp. Cameron–Banks Decl., Ex. 14 at 116:7–22.)

Furthermore, Plaintiff was the only LLVAMC employee who had been allowed to complete a clinical rotation on a part-time basis at LLVAMC while having her paid work shift reduced to part-time, when her position did not require an advanced (Pharm D.) degree. (DSUF ¶¶ 3, 17, 21.) Derek Abrams, a clerk in the inpatient pharmacy, was permitted to complete an externship at LLVAMC but he completed his externship on his own time, outside of

his normal work hours, on nights and weekends. (*See* Supp. Cameron–Banks Decl., Ex. 14 at 182:2–22.) Based on LLVAMC's policies and the express statements made by Human Resources personnel to Plaintiff, no reasonable employee would have believed they were entitled to pursue their educational development further, beyond the one clinical rotation agreed to by Kawahara and other management at LLVAMC.

The undisputed evidence also shows that, despite her inability to perform future clinical rotations at LLVAMC, Plaintiff's educational pursuits were accommodated as follows: (1) Plaintiff was offered the opportunity to switch her shift to work on evenings and weekends, so that she coŭld complete her clinical rotations during the day at another facility; and (2) Plaintiff had the opportunity to complete her clinical rotations on evenings and weekends at another Facility in the event she elected not to change her shift. (PSUF ¶¶ 45–46; DSUF ¶ 21.) Plaintiff declined the opportunity to change her shift, as she understood the shift change would have been permanent, and completed her clinical rotations offsite in December 2009. (PSUF ¶¶ 47, 53.)

Plaintiff has not met her burden to show she suffered an adverse employment action based on the denial of LWOP to complete future clinical rotations. Furthermore, Plaintiff has offered no evidence or legal authority to show how denial of this leave request was "reasonably likely to deter [a reasonable employee] from engaging in protected activity." *Ray v. Henderson,* 217 F.3d at 1241–43.

Accordingly, based on the undisputed evidence, the Court finds the decision declining Plaintiff's request to complete her future clinical rotations at LLVAMC on a part-time basis was not an adverse employment action and Defendant reasonably accommodated Plaintiff's educational pursuits.

### c) Privacy violation

■ According to Plaintiff, the February 12, 2010 meeting she had with LLVAMC staff regarding the mishandling of her EEO file constituted an adverse employment action. (*See* Opp'n at 14 ("As to the threat of criminal prosecution over the missing EEO file, being threatened with criminal prosecution after complaining to the EEO manager that her private EEO file had been left in a public place, and turning the matter over to her attorney for handling, would almost certainly dissuade a reasonable employee from making such complaints, and seeking legal assistance in the future.").) Plaintiff cites no legal authority to support her position and the Court has found inadmissible most of the evidence she relies upon regarding what occurred during the meeting about the EEO file, as discussed *supra.*[9] In particular, the Court has found Curtis's statements made to Plaintiff during the February 12, 2010 meeting inadmissible because the evidence lacks foundation as to whether or not Curtis was employed by LLVAMC when he made the statements. Plaintiff's recitation of Curtis's statements during the meeting in her Declaration are

---

9. As stated in the Court's evidentiary rulings, although the record before the Court contains testimony from Kawahara, Dahlan, and Plaintiff about Curtis's statements made during the February 12, 2010 meeting, those statements are inadmissible hearsay, as the Court has been provided with no evidence about Curtis's job responsibilities or that he was an employ-

ee of LLVAMC to demonstrate whether or not he made those statements within the scope of his employment. The Court found Curtis's statements irrelevant because Plaintiff did not meet her burden to establish that statements made by Curtis, as reported by herself, Kawahara, or Dahlan, are admissible and not hearsay. *See Chang,* 207 F.3d at 1176.

inadmissible hearsay and, in any event, irrelevant as Plaintiff has not established Curtis's employment relationship with LLVAMC.

Even assuming, *arguendo*, Plaintiff had established Curtis's employment by LLVAMC, Plaintiff's reliance on the temporal proximity between her complaint to her EEO manager and being subject to a meeting regarding the location of her EEO file is misplaced here. (*See* Opp'n at 14.) First, Plaintiff does not provide the Court with any evidence that Curtis knew Plaintiff had complained to her EEO manager about the file before the February 12, 2010 meeting. In addition, the Court finds conclusory and unsupported by legal authority or evidence Plaintiff's argument that a reasonable employee would be dissuaded from engaging in protected activity given the circumstances faced by Plaintiff during the February 12, 2010 meeting.[10] Plaintiff's argument is further undercut because she was not dissuaded from engaging in protected activity after the meeting, as she filed on March 22, 2010 an EEO complaint, in part, about her treatment during the February 12, 2010 meeting. (*See* PSUF ¶ 80.)

Accordingly, the Court finds Plaintiff has not met her burden to show that the February 12, 2010 meeting constituted an adverse employment action.

### d) Transfer to outpatient pharmacy

Plaintiff argues next that her transfer to the outpatient pharmacy constituted an adverse employment action because: (1) she previously had been subjected to discrimination in that department and the Administrative Board of Investigations had recommended in 2003 that Plaintiff not be stationed in the outpatient department; (2) her job duties were changed when she was reassigned; (3) Defendant failed to show the persons Plaintiff had previously accused of unlawful harassment and discrimination no longer worked in the outpatient department; and (4) that any reasonable employee would be dissuaded from engaging in protected activity if they were faced with Plaintiff's reassignment. (*See* Opp'n at 14 (citing *Yartzoff*, 809 F.2d at 1376 and *Burlington*, 548 U.S. 53, 126 S.Ct. 2405).) Without citing any authority, Defendant argues Plaintiff's reassignment was not an adverse employment action and that "Plaintiff failed to submit any admissible evidence to establish that the reassignment affected her workload, work schedule, or compensation, or that the reassignment would place her under the supervision of her previously complained about first-line supervisor." (Reply at 9; *see also* Mot. at 8.)

Depending on the circumstances, a job transfer can amount to an adverse employment action for purposes of Title VII. *See Poland*, 494 F.3d at 1180; *Yartzoff*, 809 F.2d at 1376. In *Poland*,[11] the Ninth Circuit found the plaintiff had suffered two adverse employment actions: (1) an investigation was initiated against him after he filed an EEO complaint; and (2) he was transferred to Virginia from Portland, Oregon. The district court had found the transfer to Virginia constituted a constructive discharge " 'because the reassignment to Virginia resulted in separation from his family and demotion to a nonsupervisory position.' " 494 F.3d at 1179. The Ninth

---

10. A conclusory allegation is insufficient to create a genuine issue of material fact. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir.2011); *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir.1999).

11. Although *Poland* is a case with claims brought under the Age Discrimination and Employment Act ("ADEA"), the Ninth Circuit's discussion of the plaintiff's case adopts the Title VII retaliation framework. The Court finds this analysis persuasive here.

Circuit affirmed the district court's finding. *Id.* at 1180.

Likewise, in *Yartzoff,* the Ninth Circuit found the plaintiff was subjected to two adverse employment actions, including the transfer of the plaintiff's duties. 809 F.2d at 1375–76. Over the period of six months, the plaintiff's supervisors "transferred several job duties away from him" and then approximately one year later "transferred additional responsibilities away from him." *Id.* at 1373. The Ninth Circuit found the plaintiff "clearly met" the second element of his *prima facie* retaliation claim on this factual basis. *Id.* at 1375–76.

Here, the Court must evaluate each factual basis for Plaintiff's argument to determine whether or not she meets her burden as to this element of her *prima facie* retaliation claim.

■ As to Plaintiff's first basis for claiming the transfer was an adverse action, the Court has ruled, *supra,* that the findings and recommendations of the Administrative Board of Investigations are inadmissible hearsay and the Court will not consider them. Plaintiff does, however, present admissible evidence through her Declaration that in 2003 she had been transferred from the outpatient pharmacy because she felt harassed by her supervisor, Ron Chan, and six co-workers. (*See* Uche–Uwakwe Decl. ¶ 42 (limited per the Court's ruling, *supra*).) Plaintiff also presents undisputed evidence that several of those persons who Plaintiff felt had harassed her previously were working in the outpatient department at the time of her reassignment in February 2010. (*Id.* at ¶ 43 (limited per the Court's ruling, *supra*).) Moreover, Sam, the outpatient supervisor, told Plaintiff that the outpatient pharmacy was not understaffed at the time of Plaintiff's transfer. (*Id.* at ¶ 41.) The Court finds this basis supported by admissible, undisputed evidence.

As to Plaintiff's second basis, she does not present admissible evidence to show her job duties changed when she was transferred to the outpatient pharmacy. The parties present undisputed, admissible evidence regarding the job duties of inpatient pharmacists at LLVAMC and Plaintiff's job duties as an outpatient pharmacist stationed in the inpatient pharmacy department. (DSUF ¶ 35 (limited to the Court's ruling, *supra*); Supp. Cameron–Banks Decl., Ex. 15 at 15:6–16:10; Supp. Werdebaugh Decl., Ex. 13.) Neither party, however, presents admissible evidence that Plaintiff's job duties changed in any way when she was transferred to the outpatient pharmacy in February 2010. Accordingly, the Court does not find this basis supported by admissible evidence.

Plaintiff's third basis is duplicative of the first and does not independently support Plaintiff's argument. Moreover, it is not Defendant's burden to prove Plaintiff's *prima facie* case.

■ As to Plaintiff's fourth basis, the Court finds reassigning an employee to a unit from which she had been transferred previously because of harassment by co-workers who remain in that department would dissuade a reasonable employee from engaging in protected activity. *See Brosseau v. Haugen,* 543 U.S. 194, 195 n. 2, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) ("Because this case arises in the posture of a motion for summary judgment, we are required to view all facts and draw all reasonable inferences in favor of the nonmoving party...."); *Ray v. Henderson,* 217 F.3d at 1241–43. Contrary to Defendant's argument, Plaintiff need not show that her job duties, compensation, and schedule changed in order to show the transfer was an adverse employment action. *See Ray v. Henderson,* 217 F.3d at 1241–43.

Based on the admissible evidence, Plaintiff meets her burden as to this element of her *prima facie* retaliation claim. The transfer of Plaintiff to the outpatient pharmacy, in light of the history of harassment by employees who remained working in that unit at the time of the transfer, constituted an adverse employment action. *See Poland,* 494 F.3d at 1180; *Yartzoff,* 809 F.2d at 1376.

### e) Denial of advanced leave

Finally, Plaintiff argues she suffered an adverse employment action when Defendant denied her request for advanced sick leave.[12] (*See* Opp'n at 14–15.) Plaintiff contends she was subjected to significant job-related stress that forced her to take extended leave and necessitated additional sick leave, for which she argues she qualified under the LLVAMC policy. (*Id.*) She argues, in conclusory fashion and without citing any supporting authority, that "[a]ny reasonable employee in such circumstances would be dissuaded from engaging in protected activity if they thought that doing so would cause them to be denied needed leave." (*Id.*) Defendant argues, in similarly bald fashion, that no reasonable employee would expect to be "given such a large amount of leave" and that "the denial had no discernible effect on Plaintiff's ability to [ ] remain away from work for over one and one-half years." (Mot. at 8.)

The Court first considers whether or not Plaintiff has presented admissible evidence demonstrating her entitlement to advanced sick leave under LLVAMC's policy.

■ The LLVAMC advanced sick leave policy states the following:

Advanced sick leave may be requested in cases of serious disability or ailments if the employee has no time limit on his/her appointment. Most employees may be advanced up to 240 hours (not in excess of 30 days) of sick leave; employees serving under a time limited or term appointment may be granted advanced sick leave up to the total which would otherwise be earned during the term of appointment. **Employees do not have a vested right to advanced leave, regardless of the circumstances.** Employees will originate any requests for advanced leave in writing, along with any supporting evidence or medical documentation, and will be expected to enter his/her leave request in the ETA or completed SF–17 and attach it to the written request. The request package will be submitted to the immediate supervisor. The supervisor will forward the package, with a recommendation for approval/disapproval, to the service chief. The service chief will then address the advanced leave criteria (Attachment C), make a recommendation for approval/disapproval, and forward the package through HRM to the appropriate Vice President for approval/disapproval.

(*See* Werdebaugh Decl., Ex. 5 at p. 7 (emphasis in original).)

"Attachment C" to LLVAMC's advanced sick leave policy sets out eight criteria for consideration by the service chief, as follows: (1) "The employee must have a serious need for advanced leave;" (2) "The reasonable expectation that the employee

---

**12.** In her Opposition papers, Plaintiff also cites being designated AWOL after being denied advanced sick leave as support for her argument that she suffered an adverse employment action. (*See* Opp'n at 13 ("(5) Denial of advanced sick leave request prompted by job related stress in April 2010, and subsequent assignment of AWOL status.").) Aside from this reference, however, Plaintiff does not develop her argument about being designated AWOL or even mention it again. The Court cannot intuit Plaintiff's intended argument on this basis and will not address it.

will return to duty;" (3) "The need for the employee's services upon return from approved absence;" (4) "Such leave must also meet the needs of the Medical Center and the service involved;" (5) "The employee must have been· at the Medical Center for one year;" (6) "The employee must not have a record of leave abuse;" (7) "The employee must have demonstrated performance worthy of the privilege;" and (8) "As of the date of the request, the employee's available balances of annual and sick leave, plus the employee's cumulative usage of leave over the previous two years." (*Id.* at p. 12.)

Plaintiff presents admissible evidence that she submitted her request for advanced sick leave in writing with supporting medical documentation. (PSUF 91 81.) Although Plaintiff presents admissible evidence with respect to Categories 2, 3, and 5 through 7 (see PSUF ¶¶ 88, 89, 91–93), Plaintiff fails to present admissible evidence as to Categories 1, 4, and 8, as discussed *supra* in the Court's evidentiary rulings with respect to PSUF 9191 87, 90, and 94. Plaintiff, thus, did not make a necessary showing as to each category the Vice President was required to consider when evaluating her request for advanced sick leave per LLVAMC's advanced leave policy. Moreover, the policy clearly states (1) employees do not have a vested right to advanced sick leave and (2) that advanced leave will be granted at the discretion of the appropriate Vice President after considering the eight factors identified in "Attachment C" and the recommendations of the employee's immediate supervisor and service chief. (Werdebaugh Decl., Ex. 5 at p. 7, 12.) Based on the terms of the advanced leave policy, no reasonable employee in Plaintiff's circumstances would

believe she would obtain advanced leave, in particular 296 hours of non-FMLA LWOP, under the established criteria. Furthermore, a reasonable employee would not be dissuaded from engaging in protected activity after their request for advanced leave was denied. *See Ray v. Henderson,* 217 F.3d at 1241–43.

Accordingly, the Court finds the denial of Plaintiff's request for advanced leave was not an adverse employment action; Plaintiff has not met her burden as to this element of her *prima facie* retaliation claim.

### 3. Causation

Plaintiff has met her burden as to the first two elements of her *prima facie* retaliation claim based on her transfer to the outpatient pharmacy. The Court now evaluates whether or not Plaintiff meets her burden with respect to the causation element.

██ As stated above, Plaintiff must show that her engagement in protected activity was the but-for cause for her reassignment to the outpatient pharmacy. *See Nassar,* 133 S.Ct. at 2533–34; *Westendorf,* 712 F.3d at 422–23 (applying but-for causation standard to Title VII retaliation claim); *Villiarimo,* 281 F.3d at 1064–65 (same).[13] In *Villiarimo,* the Ninth Circuit stated the following about proving but-for causation in Title VII retaliation cases:

> We have recognized previously that, in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 507 (9th Cir.2000)

**13.** The Court notes that the Supreme Court in *Nassar* announced the but-for causation standard for retaliation claims brought under Title VII on June 24, 2013. The Court relies on

*Nassar* in its analysis, as well as Ninth Circuit precedent that have applied the but-for causation standard to Title VII retaliation cases, but predate the *Nassar* decision.

(noting that causation can be inferred from timing alone); *see also Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir.1989) (*prima facie* case of causation was established when discharges occurred forty-two and fifty-nine days after EEOC hearings); *Yartzoff*, 809 F.2d at 1376 (sufficient evidence existed where adverse actions occurred less than three months after complaint filed, two weeks after charge first investigated, and less than two months after investigation ended). But timing alone will not show causation in all cases; rather, "in order to support an inference of retaliatory motive, the termination must have occurred 'fairly soon after the employee's protected expression.'" *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009–10 (7th Cir.2000). A nearly 18–month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation. *See id.* (finding that a one-year interval between protected expression and the employee's termination, standing alone, is too long to raise an inference of discrimination); *see also Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 398–99 (7th Cir.1999) (four months too long); *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir.1998) (eight months too long), cert. denied, 528 U.S. 988, 120 S.Ct. 450, 145 L.Ed.2d 367 (1999); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir.1998) (five months too long); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997) (four months).

281 F.3d at 1064–65.

Here, Plaintiff's protected activities include filing EEO complaints against Kawa-

hara on September 30, 2008 for employment discrimination (PSUF ¶ 37) and on August 24, 2009 for designating her AWOL (PSUF ¶ 48), and complaining to her EEO representative about the mishandling of her EEO file on February 10, 2010 (PSUF ¶ 61). Plaintiff's August 24, 2009 EEO complaint was awaiting a hearing as of February 12, 2010. (PSUF ¶ 60.)

In this analysis, the Court cannot consider evidence of protected activities in which Plaintiff engaged after the adverse employment action; accordingly, any of Plaintiff's protected activities after February 12, 2010 are irrelevant, as Plaintiff has established only that her reassignment to the outpatient pharmacy constituted an adverse employment action. See, *e.g.*, *see also Richards v. City of Seattle*, 342 Fed. Appx. 289 (9th Cir.2009) (affirming district court's grant of summary judgment and noting the plaintiff could not demonstrate a causal nexus where the adverse employment action took place before the protected activity); *Diaz v. Connolly*, 332 Fed. Appx. 385 (9th Cir.2009) (same).[14]

■ Plaintiff's three relevant protected activities occurred one and a half years, six months, and one day, respectively, before the adverse employment action, *i.e.*, her transfer to the outpatient pharmacy. Plaintiff's first protected activity, the discrimination charge against Kawahara filed in 2008, occurred too long before the adverse employment action to warrant a causation inference. *See Miller*, 885 F.2d at 505; *Yartzoff*, 809 F.2d at 1376; *Paluck*, 221 F.3d at 1009–10. The remaining two activities, however, are sufficiently close in time to support an inference of causation here. *Id.* In particular, the August 24, 2009 EEO complaint against Kawahara

14. The Court cites both unpublished Ninth Circuit cases as persuasive authority pursuant to Ninth Circuit Rule 36–3(b).

was pending hearing at the time of the February 12, 2010 meeting. The February 12, 2010 meeting concerned the location of Plaintiff's EEO file that contained her August 24, 2009 EEO complaint. Kawahara was a party to the February 12, 2010 meeting about Plaintiff's EEO file. Directly after the February 12, 2010 meeting about the EEO file and while Kawahara, Plaintiff, and Dahlan were still in the meeting room, Kawahara issued Plaintiff the notice that she was transferred to the outpatient pharmacy. Given this sequence of events, Plaintiff meets her burden as to this element of but-for causation for her *prima facia* retaliation case, given the proximity in time between her protected activities and the adverse employment action.[15] See, *e.g., Adusumilli*, 164 F.3d at 363 ("in some circumstances, this sequence of events could raise the inference of a causal connection"); see also *Miller*, 885 F.2d at 505; *Yartzoff*, 809 F.2d at 1376; *Paluck*, 221 F.3d at 1009–10.

Accordingly, the Court finds Plaintiff has met her burden to prove each element of her *prima facie* retaliation claim.

### 4. Defendant's Non–Retaliatory Reason for Adverse Employment Action

As Plaintiff has met her burden of showing a *prima facie* retaliation claim, the burden now shifts to Defendant to articulate a legitimate, non-retaliatory reason for his action. *Stegall*, 350 F.3d at 1065.

According to Defendant, Plaintiff was transferred to the outpatient pharmacy "to allow the understaffed outpatient pharmacy section to have full use of the fulltime outpatient pharmacists, and to allow the Loma Linda VAMC Pharmacy management the ability to properly supervise and evaluate Plaintiff's performance." (Mot. at 10; see also Reply at 10 (same).) In his moving papers, Defendant relies on DSUF ¶¶ 33 through 35 to support his argument. (*See* Mot. at 10). As discussed *supra*, the Court has found DSUF ¶¶ 33 and 34 unsupported by admissible evidence in full and DSUF ¶ 35 only to be supported by admissible evidence as to the following statements: "At the time, Plaintiff, as an outpatient pharmacist" and "could not be properly supervised or evaluated [by] the inpatient pharmacy supervisor." Also as to DSUF ¶ 35, the supporting deposition testimony from Dahlan reflects that she, as the inpatient pharmacy manager, had a difficult time evaluating Plaintiff but there is no testimony about why Plaintiff was transferred to the outpatient pharmacy. (See Cameron–Banks Decl., Ex. 9 at 18:10–20:5.) This evidence is insufficient for the Court to infer Defendant had a legitimate reason for transferring Plaintiff to the outpatient pharmacy.

In his Reply papers, Defendant also cites deposition testimony of Kawahara to support his argument about the purported non-retaliatory reason for Plaintiff's transfer. (*See* Reply at 10.) Specifically, Kawahara testified that Plaintiff was transferred to the outpatient pharmacy because "she was working under a functional statement as an outpatient pharmacist." (Werdebaugh Decl., Ex. 10 at 156:21–24.) The Court does not find this testimony, in and of itself, evidences the purported non-retaliatory reason proffered by Defendant for Plaintiff's transfer.

---

**15.** In the alternative, Plaintiff argues she has presented direct evidence of retaliatory motive, *i.e.*, statements made by Kawahara as relayed by Plaintiff's supervisors and an EEO manager. (Opp'n at 16.) The Court rejects Plaintiff's alternative argument as the Court has found Plaintiff's evidence proffered in support of this argument to be inadmissible hearsay, irrelevant, and unduly prejudicial, discussed *supra*.

Although Defendant does not cite it in support of his argument that a legitimate, non-retaliatory reason existed for Plaintiff's transfer, Defendant attaches the memorandum Kawahara issued to Plaintiff that instituted the transfer on February 12, 2010 within his Exhibit 2, which Werdebaugh testified through declaration is "a true and accurate copy of the EEO Complaint for EEO Case No. 200P–0605–201010353, along with true and accurate portio. [sic]." (*See* Werdebaugh Decl., Ex. 2 at 10.) The Court notes that Defendant does not authenticate this memorandum with testimony from Kawahara, Plaintiff, or Dahlan, the three persons in the meeting room when Kawahara issued the memorandum to Plaintiff; Defendant provides portions of testimony from each witness, but none that authenticates this document specifically. (*See* Cameron–Banks Decl., Exs. 7, 9, 10.) Plaintiff, however, does not dispute the document's authenticity and, in fact, relies upon this document for the truth of the matter in opposing the Motion. (*See* Uche–Uwakwe Decl. ¶ 41 ("Dr. Kawahara gave me an envelope and harshly told me that the envelope contained my reassignment back to the outpatient pharmacy, effective March 15, 2010 (Movant's Exh. 2–10).").) The Court, thus, considers this memorandum admissible evidence for purposes of this Motion, as the memorandum coupled with Plaintiff's declaration testimony "support a finding that the matter in question is what the proponent claims." *Orr*, 285 F.3d at 773 (citation omitted).

The February 12, 2010 memorandum identified the following reason for Plaintiff's transfer to the outpatient pharmacy:

"Recently, a review was conducted based on staffing/workload needs within Outpatient Pharmacy. This review found it necessary to make staff adjustments. As a result, this memorandum is to inform you that you will be reassigned to the Outpatient Pharmacy Section to provide support as a Staff Pharmacist effective Monday, March 15, 2010."

(*See* Werdebaugh Decl., Ex. 2 at 10.)

Defendant, with the February 12, 2010 memorandum and the cited Kawahara deposition testimony that Plaintiff was transferred because she was working under a functional statement as an outpatient pharmacist, meets his burden to show that the reason for Plaintiff's transfer was legitimate and not retaliatory.

### 5. Pretext

As Defendant has met his burden to provide a legitimate, non-retaliatory reason for transferring Plaintiff to the outpatient pharmacy, the burden shifts to Plaintiff to show that the employer's reason is pretextual. *See Stegall*, 350 F.3d at 1065.

Plaintiff can meet her resulting burden by presenting "specific and substantial" circumstantial evidence, including temporal proximity between Defendant's adverse actions and her protected activity that Defendants sought to repress. *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir.2001). Plaintiff's evidence "must either 'directly ... persuad[e]'" the Court that Defendant was "'more likely motivated'" by an impermissible purpose, i.e., retaliation, than by his stated purpose, or "'indirectly ... show[ ] that [Defendant's] proffered explanation is unworthy of credence.'" *Block v. Solis*, 436 Fed.Appx. 777, 779 (9th Cir.2011)[16] (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (brackets of the Solis Court).

**16.** Cited as persuasive authority pursuant to Ninth Circuit Rule 36–3.

While "[g]enerally, a plaintiff need only offer 'very little' direct evidence of motivation to survive summary judgment," *Ulrich v. City and Cnty. of S.F.*, 308 F.3d 968, 980 (9th Cir.2002) (citation omitted), Defendant is nevertheless entitled to summary judgment "if [Plaintiff] created only a weak issue of fact as to whether [Defendant's] reason was untrue and there was abundant and uncontroverted evidence" that Defendant's conduct was not retaliatory. *Cf. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (holding, in an age discrimination case, that even if a plaintiff adduces sufficient evidence for a court to reject a defendant's nondiscriminatory explanation for its conduct, the defendant may still prevail as a matter of law). Plaintiff may not avoid summary judgment by arguing, in the face of the evidence to the contrary, that the set of events she alleges "could conceivably have occurred," because the mere conceivability of a set of events "does not give rise to a reasonable inference it did in fact occur." *Cafasso*, 637 F.3d at 1061. Moreover, "an employee's subjective personal judgments" do not raise a genuine issue of material fact. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir.1996).

■ Here, Plaintiff argues that the temporal proximity between her protected activities and the adverse employment action provide sufficient evidence of pretext. (*See* Opp'n at 19–20.) In addition, specifically as to her transfer to the outpatient pharmacy, Plaintiff argues the following: [17]

> While the VA contends that Plaintiff was transferred back to the outpatient department due to "staffing needs", Defendant has offered no evidence as to what those staffing needs were or what staffing review was conducted. Plaintiff has offered evidence that neither the inpatient supervisor nor the outpatient supervisor were consulted on the need for the transfer before it was ordered. Plaintiff has also offered the statement of Dr. Sam, the outpatient supervisor, to the effect that she was not understaffed at the time, did not request the transfer, and did not have an available shift for Plaintiff. [¶] Plaintiff has offered evidence that the transfer involved a change in her duties because she would no longer be performing inpatient functions, and would be performing different outpatient functions. Plaintiff has also offered evidence that she was being sent back to work with many of the *same people* that had created the hostile work environment in the first place, before she was transferred out at the recommendation of the ABOI. Defendant has no admissible evidence that the circumstances requiring Plaintiff's removal had changed. Dr. Kawahara never talked to Plaintiff before making his decision, does not recall what staffing review he conducted, and has offered no evidence that he did anything to verify the circumstances in outpatient had changed. [¶] Finally, the transfer was not done in accordance with the policy as expressed by the Master Agreement, Article 12, Details, Reassignments and Temporary Promotions, in that there was no positing of the job notice for the outpatient department, no consideration of voluntary requests, or adequate notification of reassignment.

(Reply at 22–23 (emphasis in original).)

Preliminarily, as stated herein, the Court has found inadmissible Plaintiff's evidence that Plaintiff's transfer changed her job duties and any recommendations made by the ABOI. Plaintiff's arguments regarding pretext premised on these facts

---

17. The Court quotes Plaintiff's argument in full, to avoid an inartful summary.

are unsupported and the Court will not consider them. The Court also notes Plaintiff's reliance on the Master Agreement to show Defendant did not comply with the reassignment policy is misplaced. First, although Plaintiff provides the relevant portion of the Master Agreement as an Exhibit[18] (see Cody Decl., Ex. V at 112–114), Plaintiff fails to provide necessary authentication of the document from the Werdebaugh deposition, apparently during which the document was introduced as an exhibit. *See Orr*, 285 F.3d at 774. The document lacks requisite authentication and the Court will not consider it. Even if the Court were to consider the Master Agreement, the document alone does not demonstrate that Defendant failed to comply with the reassignment policy, without other evidence demonstrating there was no job notice posted, as Plaintiff baldly contends.

Despite these preliminary shortcomings, Plaintiff's evidence of pretext is sufficient to raise a triable issue of material fact. First, as argued by Plaintiff, Defendant has offered no admissible evidence regarding the staffing needs of the inpatient and outpatient pharmacies at the time Plaintiff was transferred to demonstrate the transfer was warranted. In fact, Plaintiff presents evidence from the outpatient supervisor, Sam, who said there was no need for additional staffing in the outpatient pharmacy at the time of Plaintiff's transfer. (PSUF ¶ 75.) Moreover, Plaintiff points to Kawahara's deposition testimony, stating he did not recall whether or not a staffing assessment was conducted to determine if it was appropriate to transfer Plaintiff. (*See* Curd Decl., Ex. W at W–19–20, 155:2–156:15.)

Second, Plaintiff has presented evidence that the employees she had accused of

harassing her in the past remained on staff at the outpatient pharmacy at the time of the transfer. A reasonable jury could find that Plaintiff was transferred to the outpatient pharmacy to work alongside employees she had previously accused of harassment as a punishment for her prior EEO activity. *See Emeldi v. Univ. of Oregon*, 698 F.3d 715, 729–30 (9th Cir.2012) (reversing district court's grant of summary judgment in favor of the defendant because the plaintiff had "presented evidence from which a reasonable jury could conclude that the [defendant's proffered legitimate reason] is pretextual."). Finally, the temporal proximity between Plaintiff's protected activities and the adverse employment action, discussed *supra*, in light of the other evidence Plaintiff presents here, constitute "specific and substantial" circumstantial evidence that Defendant's stated reason for transferring her was pretextual. *Bergene*, 272 F.3d at 1142. Plaintiff's evidence raises a triable issue that Defendant's reason for transferring her to the outpatient pharmacy "is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.

Accordingly, Plaintiff has met her resulting burden as to her *prima facie* retaliation claim, on the basis of her transfer to the outpatient pharmacy, and has raised a triable issue as to whether or not Defendant's proffered legitimate reason for Plaintiff's transfer was pretextual. *See Stegall*, 350 F.3d at 1065; *see also Celotex*, 477 U.S. at 331, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; Fed. R.Civ.P. 56(a). The Court hereby DENIES Defendant's Motion as to this claim.

**B. Harassment/Hostile Work Environment**

Defendant argues Plaintiff has failed to exhaust her administrative remedies with

---

**18.** Plaintiff did not provide a citation to this document. Again, the Court is not a "pig hunting for truffles." *Guatay*, 670 F.3d at 987 (quotations and citation omitted).

respect to her second claim, thereby divesting the Court of subject matter jurisdiction over it. (*See* Mot. at 11–12.) In the alternative, Defendant argues that Plaintiff cannot submit sufficient evidence to establish her claim. (*Id.* at 12–13.)

Since the issue of exhaustion goes to the Court's subject-matter jurisdiction, the Court addresses it first. *See Potter v. Hughes*, 546 F.3d 1051, 1061 (9th Cir.2008) (noting that courts should "address subject matter jurisdiction at the outset in the 'mine run of cases,' and reach other issues first only where the jurisdictional issue is 'difficult to determine . . . .' ") (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007)).

Defendant is correct that before filing a claim for employment discrimination in violation of Title VII in federal court, a plaintiff is required first to exhaust administrative remedies by filing such a claim with either the Equal Employment Opportunity Commission ("EEOC") or the California Department of Fair Employment and Housing ("DFEH") within 180 days of the alleged unlawful employment practice. *See* 42 U.S.C. §§ 2000e–5(1), 5(e)(1), 8(b); 29 C.F.R. § 1626.10(c). Only after a plaintiff has received a right-to-sue letter from either the EEOC or DFEH may a plaintiff file suit. *See* 42 U.S.C. §§ 2000e–5(f)(1). In *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632 (9th Cir.2002), the Ninth Circuit addressed the requirement that all administrative remedies be fully exhausted in the Title VII context. The *Freeman* court recognized that "the administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *Id.* at 636 (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir.2002)).

"Subject matter jurisdiction extends to all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge." *Vasquez*, 349 F.3d at 644. Moreover,

"[i]n determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *B.K.B.*, 276 F.3d at 1100.

Here, Plaintiff filed three EEO complaints that gave rise to this lawsuit. (*See* Werdebaugh Decl., Exs. 1, 2, 3; PSUF ¶¶ 48, 80, 95.) Construing the complaints liberally and drawing all reasonable inferences in favor of Plaintiff, the non-moving party, Plaintiff did not mention racial harassment or a hostile work environment based on race as one of her claims or factual bases for any of her claims. *See B.K.B.*, 276 F.3d at 1100 ("We construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." (internal quotations, citation omitted)). On first glance, thus, it appears she has failed to exhaust her administrative remedies with respect to her harassment/hostile work environment claim.

In Opposition, Plaintiff argues that she "has alleged the same facts which constitute retaliation also constitute harassment

based on discrimination" and that her hostile work environment claim has been exhausted because "an investigation of the EEOC charge would have revealed the facts supporting a claim of discrimination, and a claim of discrimination would have 'grown out of the charge.'" (Opp'n at 24 (quoting *Vasquez*, 349 F.3d at 634).) In support of her harassment/hostile work environment claim, Plaintiff presents evidence that she argues evidences Kawahara's racial bias against her. (*See* Opp'n at 24; PSUF ¶¶ 107–108; Uche–Uwakwe Decl. ¶ 56(a)-(d), 57.) As discussed herein, the Court has found inadmissible Plaintiff's evidence regarding harassment and discrimination that was previously adjudicated in a related lawsuit. The only remaining evidence here upon which Plaintiff bases her harassment/hostile work environment claim is as follows: (1) Kawahara assigned preferred shifts to Asian employees, despite Plaintiff's seniority (PSUF ¶ 107 (limited by the Court's evidentiary ruling, *supra*); Uche–Uwakwe Decl. ¶ 56(d)); (2) in 2000, Kawahara did not meet with Plaintiff, the only African American, but met with all of the other pharmacy employees who were mostly Asian (Uche–Uwakwe Decl. ¶ 56(a)); and (3) when Plaintiff became pregnant in 2001, Kawahara refused to honor her request to work part-time due to her high-risk pregnancy until after Human Resources and an EEO manager intervened, when he approved the request approximately four months after Plaintiff submitted it (Uche–Uwakwe Decl. ¶ 56(c) (limited by the Court's evidentiary ruling, *supra* )).

Plaintiff's evidence proffered in support of her harassment/hostile work environment claim demonstrates that her supporting factual contentions are not reasonably related to the matters identified in her three EEO complaints.

By even the most liberal reading of the EEO complaints here, no reasonable jurist could find Plaintiff's purported racial harassment and subjection to a hostile work environment because of her race or national origin had "grow[n] out of the charge[s]" submitted. *Vasquez*, 349 F.3d at 644–45. Plaintiff's EEO complaints were limited to Kawahara designating her as AWOL, Curtis threatening her with a privacy violation, Kawahara transferring her to the outpatient pharmacy, and Kawahara denying her advanced sick leave, all matters arising in late 2008 through 2012.

Simply put, the preferential shift assignment to Asian employees, failure to meet with Plaintiff in 2000, and refusal to accommodate Plaintiff's high risk pregnancy in 2001 with a schedule change for several months, do not relate in any respect to the matters giving rise to Plaintiff's EEO complaints at issue in this lawsuit.[19] *Vasquez*, 349 F.3d at 645 ("Because Vasquez did not present the legal theory of unlawful retaliation, and the operative facts regarding this part of his claim were not related to the facts in the EEOC charge, he did not exhaust his administrative remedies."); *see also Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir.1981) (finding EEOC charge must notify the agency of the legal theory being argued and the operative facts at issue and that "[t]he substance of the administrative charge, rather than its label, is the concern of Title VII."). Although these matters arose during Plaintiff's employment at LLVAMC, took place at LLVAMC, and most concerned Kawahara, they are not

---

**19.** The Court notes Plaintiff alleged in the SAC that she was subjected to "unwanted harassment and a hostile work environment because of her national origin and race" in 2009 and 2010. (See SAC ¶ 40.) In Opposi-

tion, however, Plaintiff presents no evidence of harassment or hostile work environment because of her national origin and race that occurred in 2009 and 2010.

sufficiently related to Plaintiff's charges in her three EEO complaints at issue here to provide sufficient notice to the EEOC. *See B.K.B.*, 276 F.3d at 1100.

Accordingly, the Court finds it does not have subject matter jurisdiction over Plaintiff's harassment/hostile work environment claim because Plaintiff failed to exhaust her administrative remedies with respect to this claim. *See B.K.B.*, 276 F.3d at 1099 ("In order to establish subject matter jurisdiction over her Title VII claim, Plaintiff was required to exhaust her administrative remedies."); *EEOC v. Farmer Brothers Co.*, 31 F.3d 891, 899 (9th Cir.1994) (same). The Court GRANTS Defendant's Motion as to this claim.

## VI. CONCLUSION

For the foregoing reasons, the Court DENIES IN PART Defendant's Shinseki's Motion for Summary Judgment as to Plaintiff's retaliation claim, as Plaintiff has demonstrated a *prima facie* case and raised a triable issue regarding whether or not Defendant's proffered reason for transferring her to the outpatient pharmacy was pretextual. The Court GRANTS IN PART Defendant Shinseki's Motion for Summary Judgment as to Plaintiff's harassment/hostile work environment claim, as the Court does not have subject matter jurisdiction over the claim that has not been exhausted administratively. The Court hereby dismisses Plaintiff's harassment/hostile work environment claim for lack of subject matter jurisdiction.